[No. F012582. Fifth Dist. Oct. 2, 1990.]

RUTH W. ELDRIDGE, Plaintiff and Appellant, v.
SIERRA VIEW LOCAL HOSPITAL DISTRICT et al., Defendants
and Respondents.

**COUNSEL**

Frampton, Soley, Hoppe & Boehm and Scott W. Williams for Plaintiff and Appellant.

Hurlbutt, Clevenger, Long, Vortmann & Rauber and James P. Hurlbutt for Defendants and Respondents.

**OPINION**

**BROWN (G. A.), J.***—

Ruth W. Eldridge appeals from a summary judgment in favor of the respondent, Sierra View Local Hospital District, a public agency, its board of directors and administrator. The appeal raises the issue of whether a local hospital district may lawfully prohibit a person from simultaneously holding the position of hospital district board member and hospital employee.

FACTS

In June or July of 1986 appellant, Ruth W. Eldridge, a nurse employed by Sierra View Hospital, announced her candidacy for a vacant position as a director on the Sierra View Local Hospital District Board of Directors. When the administrator of the hospital district learned of her candidacy, he became concerned about the propriety of a hospital district employee sitting on the board and brought the matter to the attention of the board. The board ultimately concluded that it was not appropriate for an employee to sit on the board while in the employ of the district. The board was of the opinion the two positions were incompatible and fraught with conflicts of

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

interest. In an effort to address the perceived incompatibility, the board passed the following amendment to the bylaws of the hospital district:

*"Section 8. Conflict of Interest*

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"It being perceived that the positions of member of the Board of Directors and employee of the District vested in any individual will necessarily produce conflicts of interest, or the strong possibility of conflicts of interest, in such individual, no employee of the District shall be eligible also to serve as a director of the District during his incumbency as such employee. An employee of the District shall be eligible to candidacy for election to the Board of Directors, and may be appointed to the Board of Directors in any case in which any other person could be so appointed, but shall not assume office on the Board of Directors until he or she has resigned his or her employment with the District."

Appellant was aware of the bylaw prior to the election. She was reminded of the bylaw after her election to the board and was told that her employment would be terminated immediately if she accepted the position. She nevertheless accepted the position to which she had been elected, and her employment at the hospital was terminated. The termination was solely because she had been elected to the board.

Appellant filed a petition for writ of mandate which claimed Sierra View Local Hospital District, Roger S. Good, administrator of the hospital district, and individual members of the board of directors of the hospital district (collectively referred to as the Hospital), unlawfully terminated her employment. The petition contains seven causes of action. The first three causes of action allege the Hospital violated appellant's civil rights by terminating her employment in violation of her right to substantive and procedural due process (first cause of action), in violation of her right to freedom of speech and assembly (second cause of action) and in violation of her right to equal protection (third cause of action). The petition also alleges her termination was in breach of contract (fourth cause of action), in breach of an implied covenant of good faith and fair dealing (fifth cause of action), in violation of public policy not to terminate employees for engaging in political activities (sixth cause of action) and in violation of the statutory prohibition contained in Labor Code section 1101 against terminating employees for engaging in political activities. Appellant seeks reinstatement and damages.

In April 1989 the Hospital's motion for summary judgment was granted.

## DISCUSSION

Appellant contends the trial court misapplied the law in several respects when it granted the motion for summary judgment. ██ Specifically, she argues the bylaw does not withstand legal scrutiny under established statutory prohibitions, constitutional principles and public policy.

In our democracy the right to seek and hold public office has been accorded special, sensitive protection as a fundamental and valuable constitutional right by our California courts. ██ The Supreme Court has recently described every citizen's political rights: "The right to seek public office and the right to the unrestricted exercise of the franchise are fundamental. They are protected by the First Amendment and article I, section 2 of the California Constitution." (*Canaan* v. *Abdelnour* (1985) 40 Cal.3d 703, 727 [221 Cal.Rptr. 468, 710 P.2d 268, 69 A.L.R.4th 915].)

"[T]his court has described the right to hold public office as 'valuable, fundamental and one that is subject to First Amendment protection . . . .' [Citations.]" (40 Cal.3d at p. 714.)

" '[I]t is difficult to conceive of principles more central to a political democracy than the free and untrammelled access of the public to the ballot box and the reciprocal right of candidates to seek the public's suffrage. It follows, accordingly, that we examine with a close and questioning attention every intrusion, subtle or direct, which impairs or affects the unconditional exercise of these prerogatives.' [Citation.]" (40 Cal.3d at p. 714.)

In *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418 [139 Cal.Rptr. 473], the court said: "We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in *People* v. *Washington*, 36 Cal. 658, 662, our Supreme Court declared that '[t]he elective franchise and the right to hold public offices constitute the principal political rights of citizens of the several States.' In *Carter* v. *Com. on Qualifications etc.*, 14 Cal.2d 179, 182 [93 P.2d 140], the court pointed out: '[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship . . . [.] *The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office . . . .*' (Italics added.) More recently, the high court, citing *Carter*, has termed the right to hold public office a 'fundamental right.' (*Zeilenga* v. *Nelson*, 4 Cal.3d 716, 720 [94 Cal.Rptr. 602, 484 P.2d 578]; *Fort* v. *Civil Service Commission*, 61 Cal.2d 331, 335 [38 Cal.Rptr. 625, 392 P.2d 385].) Thus, any ambiguity in a constitutional provision calling for forfeiture of an

existing office and disqualification from holding public office should be resolved in favor of continued eligibility."

There is no California statute expressly prohibiting a hospital employee from serving on the hospital board of directors. However, with the exceptions noted in the statutory provisions, Government Code[1] section 3203 flatly prohibits a local entity from placing any restriction on the political activities of any employee.[2]

"Except as otherwise provided in this chapter, or as necessary to meet requirements of federal law as it pertains to a particular employee or employees, no restriction shall be placed on the political activities of any officer or employee of a state or local agency."

Section 3203 follows a declaration in section 3201 which states: "The Legislature finds that political activities of public employees are of significant statewide concern." Taken as a whole, chapter 9.5 of the Government Code is a strong declaration of state public policy protecting the political rights of public employees.

The exceptions contained in chapter 9.5 of the Government Code are narrowly drawn. In sum, section 3204 prohibits the corrupt political influence of or by a public officer or employee. Section 3205 prohibits an officer or employee of a public agency from soliciting political funds or contributions from other officers or employees of the agency. Section 3206 prohibits an officer or employee from participation in political activities while in uniform. Section 3207 authorizes a local agency to establish rules and regulations prohibiting or restricting officers or employees from engaging in political activities during working hours and political activities on the premises of a local agency. Section 3209 authorizes an officer or employee to solicit or receive political funds from fellow employees or officers to promote or defeat passage of a ballot measure which would affect the pay,

---

[1] All statutory references are to the Government Code unless otherwise indicated.

[2] Appellant also relies on Labor Code section 1101, which provides: "No employer shall make, adopt, or enforce any rule, regulation, or policy:

"(a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office.

"(b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees."

Being in the Labor Code, these provisions appear to apply to private employer-employee relationships. No case has applied the section to public employment. Moreover, sections 3201 and 3203 appear in chapter 9.5 of the Government Code, entitled "Political Activities of Public Employees." The introductory code section to chapter 9.5 states: "The provisions of this chapter shall supersede all provisions on this subject in the general law of this state . . . ." (§ 3201.) Accordingly, we do not rely upon Labor Code section 1101 in our analysis.

hours, retirement benefits or other working conditions subject to local agency rules and regulations passed pursuant to section 3205.

Thus the exceptions to the operation of section 3203 do not expressly permit an invasion of an employee's political rights so severe as to totally preclude a public employee from running for or holding public office.

The Hospital argues the hospital bylaw was authorized by section 1126, which in pertinent part provides: "(a) . . . [A] local agency officer or employee shall not engage in any employment, activity, or enterprise for compensation which is inconsistent, incompatible, in conflict with, or inimical to his or her duties as a local agency officer or employee or with the duties, functions, or responsibilities of his or her appointing power or the agency by which he or she is employed . . . .

"(b) Each appointing power may determine, subject to approval of the local agency, and consistent with the provisions of Section 1128 where applicable, those outside activities which, for employees under its jurisdiction, are inconsistent with, incompatible to, or in conflict with their duties as local agency officers or employees . . . .

"The local agency may adopt rules governing the application of this section. The rules shall include provision for notice to employees of the determination of prohibited activities, of disciplinary action to be taken against employees for engaging in prohibited activities, and for appeal by employees from such a determination and from its application to an employee. *Nothing in this section is intended to abridge or otherwise restrict the rights of public employees under Chapter 9.5 (commencing with Section 3201) of Title 1.*" (Italics added.)

The obvious problem with the Hospital's argument is the authority vested in the local agency by section 1126 is qualified by the provisions in chapter 9.5 of the Government Code prohibiting any restriction or abridgement of the political rights of public employees. As has been noted, section 3203, contained in chapter 9.5, states, "no restriction shall be placed on the political activities of any officer or employee of a state or local agency." Accordingly, section 1126 does not authorize placing any restrictions on the political rights of public employees.

The Hospital contends the bylaw does not violate section 3203 because the district has not placed any restrictions on appellant's political activities. They argue the bylaw does not prevent appellant from seeking or holding public office. That, of course, is literally true. However, appellant was only allowed to hold office if her employment was terminated. *Fort* v. *Civil*

*Service Commission* (1964) 61 Cal.2d 331, 334 [38 Cal.Rptr. 625, 392 P.2d 385], rejected the same argument in a constitutional context, stating: "It is unquestionable that section 41 imposes restrictions upon public officers and employees which substantially affect their rights as citizens. It is true that the provision does not directly prohibit a person from engaging in the proscribed activities, but he may do so only at the penalty of losing his employment and its attendant benefits. Although it has been held that one employed in public service does not have a constitutional right to such employment [citation], it is settled that a person cannot properly be barred or removed from public employment arbitrarily or in disregard to his constitutional rights [citations]." (See also *Bagley* v. *Washington Township Hospital Dist.* (1966) 65 Cal.2d 499 [55 Cal.Rptr. 401, 421 P.2d 409].)

While these cases discuss the issue in terms of constitutional implications, we hold the principle set forth in *Fort* applies to the exercise of a clearly defined statutory right to be free from interference with political rights (§ 3203), particularly where the statutory provision finds its genesis in constitutional principles. Thus, the Hospital could not burden the exercise of the statutory rights contained in section 3203 with the penalty of loss of employment.

The Hospital urges further that we apply the common law doctrine of incompatible public offices which essentially prevents a person from lawfully holding two public offices. ■ The doctrine provides that one individual may not simultaneously hold two public offices where the functions of the offices concerned are inherently inconsistent, as where there are conflicting interests, or where the nature of the duties of the two offices is such as to render it improper due to considerations of public policy for one person to retain both. (*Mott* v. *Horstmann* (1950) 36 Cal.2d 388, 391-392 [224 P.2d 11].) However, as is conceded by the Hospital, case law restricts the application of the doctrine to two public offices. It has no application when one of the positions is an employment rather than a public office. (*People* ex rel. *Chapman* v. *Rapsey* (1940) 16 Cal.2d 636, 644 [107 P.2d 388]; 68 Ops.Cal.Atty.Gen. 337, 338-340 (1985).) We decline to extend the doctrine to a situation where one position is a public office and the other an employment.

■ The central thrust of the Hospital's argument is that the public policy represented by the various conflict of interest statutes against public officers and employees having a conflict of interest justifies the bylaw prohibiting an employee of the district from being elected to and taking office as a member of the hospital's board of directors. The principal conflict of

interest legislation relied on is section 1090[3] and the Political Reform Act of 1974 (§§ 81000-91015).[4]

In the context of interpreting the plain language of section 3203 that "no restriction shall be placed on the political activities of any officer or employee of a state or local agency," Hospital in substance is asking the court to judicially enact an additional exception to section 3203 not presently contained in chapter 9.5.

Numerous possibilities of conflict were set forth in a declaration filed by Roger Good, hospital administrator, which we attach as an appendix to this opinion.

Appellant testified that during the 14 months she served on the board, no actual instances of a conflict arose. Appellant argues that any conflict that may occur would not be frequent or persistent but occasional and isolated.

It must be acknowledged appellant will have a conflict of interest from time to time when performing dual responsibilities for the district, and it must also be acknowledged that there is a strong public policy against conflicts of interest by public officers and employees. (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 647-649 [214 Cal.Rptr. 139, 699 P.2d 316]; *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569 [375 P.2d 289]; *City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 197 [162 Cal.Rptr. 663].)

However, conflict of interest situations normally arise after a person takes office and are dependent upon activities subsequent to the person's taking office. Such conflicts do not generally prohibit a person with a potential conflict from running for or assuming public office, nor do they require a forfeiture of office.

The effect of a person with a conflict participating in a decision is to subject the person to fines and penalties and render void the action in which the person participated, not to disqualify the person from holding office.

---

[3] Section 1090 provides in pertinent part: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members . . . ."

[4] Section 87100 provides: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."

Section 87300 provides: "Every agency shall adopt and promulgate a Conflict of Interest Code pursuant to the provisions of this article. A Conflict of Interest Code shall have the force of law and any violation of a Conflict of Interest Code by a designated employee shall be deemed a violation of this chapter."

(*Thomson* v. *Call, supra*, 38 Cal.3d at pp. 645-647.) In *Thomson*, the court in relevant part states: "We recognize the difficulty faced by a public officer who—for reasons beyond his control—finds himself in a potential conflict-of-interest situation. In addition to fully disclosing the interest, abstaining from relevant votes and discussions, seeking the advice of the city attorney, and refraining from taking advantage of the situation, it has been suggested that he could divest himself of the interest (prior to official action) or, in some instances, actually resign from his office. [Citation.] Resignation from office does not, however, appear to be a viable alternative; indeed, it may be counter to the public interest in retaining competent public officers." (38 Cal.3d at p. 650, fn. 25.) Thus, the conflict of interest statutes would not per se preclude appellant from being a member of the hospital board of directors. (73 Ops.Cal.Atty.Gen. 191, 194-195 (1990); 67 Ops.Cal.Atty.Gen. 7, 10 (1984); 65 Ops.Cal.Atty.Gen. 305, 310-311 (1982).)

Because appellant had an existing contract of employment at the time she was elected, she was not required by the operation of section 1090 to resign either her job or a position on the board. (*Thomson* v. *Call, supra*, 38 Cal.3d at pp. 645, 650, fn. 25; *City of Imperial Beach* v. *Bailey, supra*, 103 Cal.App.3d at pp. 194-196; 73 Ops.Cal.Atty.Gen. 191, 194-195, *supra*.)

However, the prohibition of section 1090 would apply if during appellant's term of office the board is called upon to renew her contract of employment or otherwise change her employment relationship with the district by promotion or modification of employment benefits. Obviously, appellant could not vote on such matters, and, even if she abstained, the board, absent the operation of the rule of necessity, would be disqualified from ordering such changes in her employment contract. (*City of Imperial Beach* v. *Bailey, supra*, 103 Cal.App.3d at pp. 194-196.) As was stated in *Thomson* v. *Call, supra*, 38 Cal.3d at page 649: "Mere membership on the board or council establishes the presumption that the officer participated in the forbidden transaction or influenced other members of the council." However, we do not agree that if such a situation arises appellant would be put to the choice of resigning her employment or her board membership. The "rule of necessity" would come into play to allow the making of contracts section 1090 would otherwise proscribe.

█ The rule of necessity provides that a governmental agency may acquire essential goods or services despite a conflict of interest, and in nonprocurement situations it permits a public officer to carry out the essential duties of his/her office despite a conflict of interest where he/she is the only one who may legally act. The rule ensures that essential government functions are performed even where a conflict of interest exists. (*Olson* v. *Cory* (1980) 27 Cal.3d 532, 537 [178 Cal.Rptr. 568, 636 P.2d 532] ["[A]

judge is not disqualified from adjudicating a cause because of personal financial interest if there is no other judge or court available to hear and resolve the cause."]; *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 366-367 [139 P.2d 908]; *Gonsalves* v. *City of Dairy Valley* (1968) 265 Cal.App.2d 400, 404 [71 Cal.Rptr. 255] ["The rule is well settled that where an administrative body has a duty to act upon a matter which is before it and is the only entity capable to act in the matter, the fact that the members may have a personal interest in the result of the action taken does not disqualify them to perform their duty. It is a rule of necessity which has been followed consistently."]; 70 Ops.Cal.Atty.Gen. 45, 48 (1987).)

The rule of necessity has been codified in section 87101[5] of the Political Reform Act of 1974 and implemented by California Code of Regulations, title 2, section 18701.[6]

Construing these provisions, the Fair Political Practices Commission, the administrative body established by the act to interpret and enforce its provisions, has held that if a board cannot, as a result of board member disqualification, obtain a quorum in order to make a decision it is legally required to make, the board may bring back as many disqualified members as is necessary to establish a quorum. The preferred means of selecting which disqualified member or members should participate is by lot or other means

[5] Section 87101 provides: "Section 87100 does not prevent any public official from making or participating in the making of a governmental decision to the extent his participation is legally required for the action or decision to be made. The fact that an official's vote is needed to break a tie does not make his participation legally required for purposes of this section."

[6] Title 2, section 18701 of the California Code of Regulations provides: "(a) A public official is not legally required to make or to participate in the making of a governmental decision within the meaning of Government Code Section 87101 unless there exists no alternative source of decision consistent with the purposes and terms of the statute authorizing the decision.

"(b) Whenever a public official who has a financial interest in a decision is legally required to make or to participate in making such a decision, he or she shall:

"(1) Disclose as a matter of official public record the existence of the financial interest;

"(2) Describe with particularity the nature of the financial interest before he or she makes or participates in making the decision;

"(3) State the reason there is no alternative source of decision-making authority;

"(4) Participate in the decision only in an open meeting of the agency, as required by Government Code Sections 11123 and 54953, or in closed session, as provided in Government Code Sections 11126, 54956.7, 54956.8, 54956.9, 54957 and 54957.6, where participation by the official is legally required for the agency to act.

"(c) This regulation shall be construed narrowly, and shall:

"(1) Not be construed to permit an official, who is otherwise disqualified under Government Code Section 87100, to vote to break a tie.

"(2) Not be construed to allow a member of any public agency, who is otherwise disqualified under Government Code Section 87100, to vote if a quorum can be convened of other members of the agency who are not disqualified under Government Code Section 87100, whether or not such other members are actually present at the time of the disqualification."

of random selection. However, nothing in the act prevents the use of other impartial and equitable means of selection. (*Matter of Hudson* (1978) 4 FPPC Ops. 13.)

In 68 Ops.Cal.Atty.Gen. 337, 351-352 (1985), the Attorney General concluded that a fire captain of a community service district who was subsequently elected to the board of the community service district could retain his position so long as there were no modifications of his employment contract while he held both positions.

In 73 Ops.Cal.Atty.Gen. 191 (1990) *supra*, a school teacher was elected to the board of directors of the school district. The Attorney General advised: "[A] 'rule of necessity' has been applied in various circumstances to allow the making of a contract that Government Code section 1090 would otherwise proscribe (see 69 Ops.Cal.Atty.Gen. 102, 107-112 (1986); 65 Ops.Cal.Atty.Gen. 305, 308-311 (1982).) We have based our 'rule of necessity' opinions allowing school boards to enter into contracts with their employees on the grounds that a school board is the only entity empowered to contract on behalf of a school district, a district must employ teachers, and teachers have statutory rights against termination except for cause. (See also *Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 366-367 [139 P.2d 908]; *Gonzalves* v. *City of Dairy Valley* (1968) 265 Cal.App.2d 400, 404-405 [171 Cal.Rptr. 255]; *Jeffery* v. *City of Salinas* (1965) 232 Cal.App.2d 29, 40; [42 Cal.Rptr. 486] 69 Ops.Cal.Atty.Gen. 255, 256-257; 67 Ops.Cal.Atty.Gen. 369, 378 (1984).)

"At most, then, Government Code section 1090 would require Ms. Botwin to abstain when the Board is making contracts in which she has a financial interest and would prevent her from changing her employment relationship with the District by promotion or otherwise. (See 69 Ops.Cal.Atty.Gen. 102, 110, fn. 7 (1986) [)]." (73 Ops.Cal.Atty.Gen. at p. 195.)

In the case at bench appellant has suggested she should be permitted to continue to be employed and serve on the board without modification of the terms of her employment while she occupies both positions. The "rule of necessity" would authorize the board to act with respect to the matters in which she is disqualified by reason of her financial interest.

Thus, there is an alternative to totally denying appellant the right to hold the office of hospital district director in derogation of her political rights expressly guaranteed by section 3203 ("no restriction shall be placed on the political activities of any officer or employee of a state or local agency"). If the hospital district's bylaw was being tested directly against the constitu-

tional right of public employees to be free of restraints upon political activities, the restrictions would have to be narrowly drawn and the state or agency must show "no alternatives less subversive of constitutional rights are available." (*Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d at p. 502.) We perceive no rational reason why similar requirements should not be imposed with respect to the positive guaranty contained in section 3203.[7]

Further, cardinal rules of statutory construction do not permit us to judicially establish an exception to section 3203 not presently contained in the statutory exceptions. The section is direct, clear and unambiguous. The word "shall" is mandatory. (§§ 5, 14.) ■ The plain meaning of a statute must be followed where its language is clear and unambiguous. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) "We give effect to statutes according to the usual, ordinary import of the language employed in framing them. When statutory language is clear and unambiguous there is no need for construction and courts should not indulge in it." (*West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 850 [226 Cal.Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257].) As the Supreme Court remarked, referring to sections 3201-3205, "the right to run for office is not restricted in any way, even as to local or partisan offices." (*Kinnear* v. *City etc. of San Francisco* (1964) 61 Cal.2d 341, 343, fn. 1 [38 Cal.Rptr. 631, 392 P.2d 391].)

Following the plain meaning of the statute is supported by public policy expressed in the Constitution and in the statute favoring the stringent protection of public employees' political rights. (§§ 3201, 3203; *Canaan* v. *Abdelnour, supra,* 40 Cal.3d 703; *Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499; *Fort* v. *Civil Service Commission, supra,* 61 Cal.2d 331.)

We have no reason to believe the Legislature did not "[know] what it was saying and meant what it said." (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227].) ■ *Expressio unius est exclusio alterius* (expression of one thing is the exclusion of another). (Black's Law Dict. (5th ed. 1979) p. 521, col. 1.) Under this maxim, if a statute specifies one exception to a general rule other exceptions are excluded. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) It is the function of the Legislature to enact exceptions to section 3203. For this court to fashion an exception not presently in the statute would be an unwarranted invasion into the legislative function.

[7]By these remarks we do not purport to pass upon the constitutionality of the hospital district's bylaw.

As the court aptly put it in *Woodmansee* v. *Lowery* (1959) 167 Cal.App.2d 645, 652 [334 P.2d 991]: "Where 'the language permits only one construction, the intent of the legislature in enacting a statute is to be gathered from the words and language employed, read as a whole. An intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intent not expressed therein.' ([45 Cal.Jur.2d,] p. 636, § 128.) Thus it is not within our province to pass upon the wisdom or expediency of the legislation here concerned as this is a matter reserved to the judgment of the legislative branch of the government . . . . [W]e may not under the guise of construction read into the statute something which the Legislature did not insert therein."

Based on the foregoing, we hold the bylaw precluding an employee of the Sierra View Local Hospital District from serving on its board of directors runs afoul of section 3203. Accordingly, we will reverse the judgment.

Hospital contends the hospital district, its administrator and the members of its board of directors are immune from liability for damages on three theories: first, that they are absolutely immune since the adoption of the bylaw was a legislative act; second, that they are qualifiedly immune since their actions did not violate a clearly established constitutional right of which a reasonable person would have been aware; third, they are immune from liability because adoption of the bylaw and appellant's termination from employment were discretionary acts.

We have decided the case based on the violation of section 3203 without deciding the federal constitutional and civil rights issues. In addition to other factors, the issue of immunity depends on whether liability is grounded on a state statutory and common law cause of action or upon federal constitutional and civil rights violations. (42 U.S.C. § 1983.)

As to the violation of section 3203, the hospital, its board and administrator are clearly immune from damages. Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

If the public employee is immune, so too is his/her public entity employer. (§ 815.2.) When the act involves a basic policy decision, the doctrine of discretionary immunity applies. (*Kemmerer* v. *County of Fresno* (1988) 200

Cal.App.3d 1426, 1438 [246 Cal.Rptr. 609].) Here, both the adoption of the bylaw and the decision to terminate appellant's employment were basic policy decisions involving discretion, for which all of the defendants are immune under sections 820.2 and 815.2.

Liability under the federal Constitution and the federal Civil Rights Act (42 U.S.C. § 1983) remains to be determined by the trial court. While the trial court purported to hold in its memorandum opinion appellant was not denied equal protection of the law, for the reasons we will state the facts in the record on the motion for summary judgment are insufficient to resolve this issue one way or the other.

■ A person who claims a denial of equal protection must first establish that the classification affects two or more similarly situated groups in an unequal manner. (*Nicolini* v. *County of Tuolumne* (1987) 190 Cal.App.3d 619, 637 [235 Cal.Rptr. 559].)[8]

"The essence of equal protection is that the state may not discriminate, in the bestowal or denial of rights, as between similarly situated persons or classes of persons." (*Laupheimer* v. *State of California* (1988) 200 Cal.App.3d 440, 457 [246 Cal.Rptr. 82].)

■ Appellant contends the bylaw arbitrarily discriminates between employees of the district and nonemployees "who may be affiliated with the District hospital and who may wish to seek election to the District board despite conflicts posed by their affiliations." She contends that affiliation with the hospital district and the potential for conflict render persons, other than employees, similarly situated.

She cites, as an example, to the fact that one of the board members, Dr. Natzke, is a physician. However, there is no evidence to support her claim that he is affiliated with the hospital other than in his position as a board member. The only evidence on the question of his relationship to the hospital is the declaration of the hospital administrator, Roger Good, in which he states that Dr. Natzke is not under contract with the hospital, is not employed by the hospital, and does not receive any compensation from the hospital district. There is no evidence that Dr. Natzke is similarly situated in terms of the extent of his relationship with the hospital and the potential for conflict between his personal interests and the interests of the hospital district.

[8] The trial court mistakenly characterized the issue as whether the bylaw treats appellant any differently than any other employee in the same class. It concluded that since physicians are not employees, appellant was not denied equal protection.

Appellant's argument seems to be that the bylaw arbitrarily discriminates between a class identified as hospital employees and a class identified as hospital medical staff the members of which, except for the officers of the medical staff, are not prohibited from serving on the board. The Hospital's motion for summary judgment does not address the question of whether the distinction between these two groups can be justified under the appropriate test of equal protection. (See *Laupheimer* v. *State of California, supra*, 200 Cal.App.3d at p. 457, quoting from *Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 798, fn. 19 [187 Cal.Rptr. 398, 654 P.2d 168].) Whether one looks at the bylaw as restricting appellant's First Amendment right to engage in political activities or impairing her fundamental right to pursue an occupation, the bylaw is subject to the strictest standard of review. (*Bagley* v. *Washington Township Hospital Dist., supra*, 65 Cal.2d at p. 501; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)

Thus, liberally construed, the pleadings establish a question of fact which has not been resolved, and the Hospital has failed to show that the hospital, its administrator and board members are entitled to judgment as a matter of law on the claim that the bylaw violates equal protection.

Similarly, if appellant pursues her federal cause of action based on a violation of her constitutional right to engage in political activity, under principles established in *Canaan* v. *Abdelnour, supra*, 40 Cal.3d 703, and *Bagley* v. *Washington Township Hospital Dist., supra*, 65 Cal.2d 499, there is a factual conflict presently in the record which needs to be resolved. While the hospital administrator filed a declaration setting forth the extent of the potential conflict (see appen.), appellant testified that during the 14 months she had served on the board not a single conflict had arisen. The extent and pervasiveness of actual conflict would appear to be significant in applying the principles of *Bagley*.

Since the issues of liability, damages and immunity under the federal causes of action remain to be resolved by the trial court, we deem it inappropriate at this time to theorize as to the potential immunities that may apply.

The judgment is reversed.

Best, P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied October 26, 1990, and respondents' petition for review by the Supreme Court was denied December 20, 1990. Panelli, J., and Arabian. J., were of the opinion that the petition should be granted.

APPENDIX

*Excerpts From the Declaration of Roger Good, Administrator of Sierra View Local Hospital District*

"a.   The Board of Directors decides the salary increases for the DISTRICT employees. An employee sitting on the Board would be placed in the position of deciding his or her own raise.

"b.   The Board of Directors become involved with issues concerning employee health benefits, including the type and amount of benefits. An employee sitting on the Board would be placed in the position of potentially affecting the type and amount of benefits available to employees, including the employee-Board member.

"c.   The Board of Directors occasionally become involved with personnel matters, including personnel policies. Their involvement has included review and approval of the employee handbook which contains provisions concerning termination of employees. An employee-Board member could potentially place his or her personal interest concerning personnel policies above his or her duties to the DISTRICT residents.

"d.   I report directly to the Board of Directors, who I consider to be my supervisors. The employees at the Hospital District, however, are considered my subordinates, who I am occasionally required to discipline or counsel. Management problems would be created by having an employee who simultaneously acted as my superior and subordinate.

"e.   The Administrator's performance is reviewed by the Board of Directors and his contract is subject to renewal every four years by the Board of Directors. To the extent personal difficulties developed between the Administrator and employee-Board member over employment matters (i.e., discipline), those difficulties could easily be carried over to the employee-Board member's actions while on the Board of Directors. Personal interest could easily prevail over the DISTRICT'S best interests.

"f.   A potential dilemma would also be created for other personnel supervising the employee-Board member. Because the employee would wear two hats—employee and Board member—the employee's supervisor may refrain from properly supervising the employee-Board member for fear of alienation and retaliation by that individual.

"g.   An employee by virtue of work experience, may develop prejudice or friendships against an individual or groups of individuals (i.e., physician), whose appointment or tenure is determined by the Board of Directors. Those personal prejudices or friendships may take precedence over the DISTRICT'S best interests.

"h.   Members of the Board of Directors have access to highly confidential and sensitive information concerning employees and medical staff. Misuse of that information could have a significant effect on Hospital operations; specifically, the peer-review process and employee morale.

"i.   The Board of Directors is responsible for establishing budgetary priorities for the best interests of the DISTRICT, even if those priorities may have a negative impact on employees.

"j.   The Board of Directors' actions affect the day-to-day operations of the Hospital District. It is necessary that those actions be made upon what is in the best interests of the DISTRICT residents. For example, a decision by the Board of Directors to reduce staffing levels, which could cause layoffs or termination, or to forego cost-of-living increases because of budgetary problems, could directly affect the personal interests of the employee-Board member, which interest could potentially influence that person's judgment of what is in the best interests of the DISTRICT.

"k.   An appearance, if not actuality, of impropriety would exist by having an employee-Board member.

"l.   The integrity of the organization would be affected. The chain of command would be circumscribed and confused. The employee-Board member may be perceived by fellow

employees as an avenue around management. The employee-Board member may attempt to utilize superior status to enhancement or preservation of subordinate status."