BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE ROBERT A. RYAN, JR., COUNTY COUNSEL, COUNTY OF SACRAMENTO, has requested an opinion on the following question:
May a volunteer firefighter serve on the board of directors of a fire protection district if he receives $8 for each response to a fire call and an allowance of up to $200 from the district for the purchase of boots?
CONCLUSION
A volunteer firefighter may serve on the board of directors of a fire protection district even though he receives $8 for each response to a fire call and an allowance of up to $200 from the district for the purchase of boots.
ANALYSIS
A fire protection district established under the Fire Protection District Law (Health Saf. Code, §§ 13800-13970) pays its volunteer firefighters $8 for each response to a fire call and grants them an allowance of up to $200 for the purchase of boots. Under these circumstances, may a volunteer firefighter serve on the board of directors of the district? We conclude that a firefighter would be eligible to serve on the board.
The statute governing our analysis is Government Code section53227[1].
It provides:
"(a) An employee of a local agency may not be sworn into office as an elected or appointed member of the legislative body of that local agency unless he or she resigns as an employee. If the employee does not resign, the employment shall automatically terminate upon his or her being sworn into office.
". . . . . . . . . . . . . . . . . . .
"(c) This section does not apply to any volunteer firefighter who does not receive a salary, or where the salary the volunteer firefighter would otherwise receive is applied directly by the local agency toward the purchase of disability, life, health, or similar insurance coverage."
A "local agency" includes a district (§ 53227.2, subd. (a)), and a "legislative body" includes "the governing board of a district" (§ 53227.2, subd. (b)) for purposes of section 53227. The fire protection district in question has an elected board of directors. (See Health Saf. Code, §§ 13840-13857.)
In analyzing the terms of section 53227, we may apply well recognized principles of statutory construction. "Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.]" (Hunt v. Superior Court (1999)21 Cal.4th 984, l000.) "`In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning.'" (Curle v. Superior Court (2001) 24 Cal.4th 1057, 1063.) Portions of a statute are to be read in the context of the entire statute, harmonizing the provisions and giving significance to every word, phrase and sentence in pursuance of the legislative purpose. (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 634; DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382 388; Woods v. Young (1991) 53 Cal.3d 315, 323.) Finally, legislative committee reports are often useful in determining the Legislature's intent. (People v. Cruz (1996) 13 Cal.4th 764, 773-774, fn. 5.)
We have dealt with volunteer firefighters in a number of contexts (see, e.g., 80 Ops.Cal.Atty.Gen. 253 (1997); 78 Ops.Cal.Atty.Gen. 116 (1995); 69 Ops.Cal.Atty.Gen. 260 (1986); 66 Ops.Cal.Atty.Gen. 176 (1983); 51 Ops.Cal.Atty.Gen. 125 (1968); 29 Ops.Cal.Atty.Gen. 211 (1957)), as has the Legislature (see, e.g., §§ 38611, 50950-50979; Health Saf. Code, § 13802; Lab. Code, §§ 230.3, 230.4, , 3212, 3361, 4458), and the courts (see, e.g., Dickey v. Workers' Comp. Appeals Bd. (1990) 224 Cal.App.3d 1460). We will rely upon these prior opinions and cases, as well as related statutes, in determining the scope of section 53227.
The obvious purpose of subdivision (a) of section 53227 is to avoid potential conflicts of interest when an employee of a public agency serves as a member of the legislative body of that public agency. (See Eldridge v. Sierra View Local Hospital Dist. (1990) 224 Cal.App.3d 311, 320-323.) The first issue to be addressed is whether a volunteer firefighter is an "employee" of the district as that term is used in section 53227, subdivision (a). If so, the firefighter would be required to resign as an employee before taking office as a director unless an exemption contained in subdivision (c) is applicable.
Volunteer firefighters may be considered to be "employees" for some purposes but not for others. Such a determination is generally made based upon the terms of the particular statute, its purposes and the relevant facts. (See, e.g., Lab. Code, § 3361; 69 Ops.Cal.Atty.Gen., supra, at pp. 262-263; 62 Ops.Cal.Atty.Gen., supra, at pp. 116-117; 29 Ops. Cal.Atty.Gen., supra, at pp. 212-215.)
Here, for purposes of the Fire Protection District Law of 1987, a volunteer firefighter is an "employee" of the district. Health and Safety Code section 13802, subdivision (e) states:
"`Employee' means any personnel of a district, including any regular or call firefighter hired and paid on a full-time or part-time basis, or any volunteer firefighter. "Employee' also includes any person who assists in the provision of any authorized emergency duty or service at the request of a person who has been authorized by the district board to request this assistance from other persons.
As for the terms of section 53227, we believe that a volunteer firefighter must also be considered a district "employee." Subdivision (c) of section 53227 grants an exemption from the resignation requirement of subdivision (a) for certain volunteer firefighters. There would be no need for the exemption if volunteer firefighters did not constitute "employees" under subdivision (a). By reading subdivisions (a) and (c) together, we find that volunteer firefighters are "employees" for purposes of section 53227.
The critical issue to be resolved is whether any exemption from the employee resignation requirement of subdivision (a) is applicable in the present circumstances. Subdivision (c) of section 53227 allows a volunteer firefighter to serve as a district director if (1) the firefighter does not receive a "salary" or (2) the "salary" is directly applied by the district toward the purchase of insurance coverage for the firefighter. In the described situation, does the payment of $8 for each response to a fire call and an allowance of up to $200 for the purchase of boots mean that the firefighter has received a "salary"? If not, the firefighter may serve as a district director.
The usual and ordinary meaning of the term "salary" is a "fixed compensation paid regularly (as by the year, quarter, month, or week) for services . . ., such compensation paid to holders of official, executive, or clerical positions — often distinguished from wage." (Webster's 3d New Internat. Dict. (1971) p. 2003.) A salary is "[a]n agreed compensation for services . . ., paid at regular intervals on a yearly basis, as distinguished from an hourly basis." (Black's Law Dict. (7th ed. 1999) p. 1337, col. 1.) "A fixed annual or periodical payment for services, depending upon the time, and not upon the amount, of services rendered" is another common definition of "salary." (Ballentime's Law Dict. (3d ed. 1969) p. 1133, col. 2.) It is apparent that under the usual definition of the term "salary," a payment of $8 for each response to a fire call and an allowance of up to $200 for the purchase of boots would not constitute a "salary."
While the Legislature could have broadly defined "salary" for purposes of section 53227 (see, e.g., Cal. Code Regs., tit. 2, § 2:18232, subd. (a) [salary defined to include "wages, fees . . . pension benefits, health and other insurance coverage, rights to compensated vacation and leave time, free or discounted transportation, payment or indemnification of legal defense costs, and similar benefits"]), it has not done so. Generally, the Legislature has used the term "salary" in its customary sense of a periodic payment (see, e.g., § 36516, subd. (a) [city council member to receive a "salary" of up to $1, 000 per month depending on the size of the city]) and has not used the term when referring to non-periodic payments (see, e.g., § 1092
["secretary may be allowed the sum of ten dollars ($10) per day for the actual time that the board may be in session"]). Is there any reason to believe that the Legislature intended to depart from the ordinary meaning of the term "salary" when it enacted section 53227?
That the term "salary" was meant to refer to periodic payments is supported by the legislative history of section 53227. When the statute was amended in 1996 (Stats. 1996, ch. 364, § 1) to allow volunteer firefighters to have their "salary" applied to insurance coverage, numerous legislative committee reports refer to the City of Avalon as the sponsor of the legislation since a member of the city's volunteer fire department received a "salary" of $225 per month. (See, e.g., Sen. Local Government Coin., Rep. on Assem. Bill No. 1004 (1995-1996 Reg. Sess.) May 30, 1996; Assem. Coin. on Local Government, Rep. on Assem. Bill No. 1004 (1995-1996 Reg. Sess.) Aug. 7, 1996.) Without the statutory amendment, the monthly salary would prevent the volunteer firefighter from serving on the legislative body of the local agency[2]. Clearly, a "salary" in its normal sense was the focus of the 1996 amendment of section 53227.
Finally, our construction of section 53227 finds support in our opinion, 29 Ops.Cal.Atty.Gen. 211, where we examined the payment of 50 cents for attendance at staff meetings and 50 cents for each 30 minutes spent at a fire received by a city's volunteer firefighters and the payment of 75 cents for attendance at meetings and "a small sum per hour for attendance at fires, the rate varying with the hour of the day" received by a fire protection district's volunteer firefighters. (Id. at p. 214.) We concluded as to these payments:
". . . Rather than being compensation for services rendered, the amounts, we believe, should be properly looked upon as reimbursement for the out-of-pocket expenses incurred by reason of membership in the department. It is our understanding that the volunteers furnish their own transportation to and from the fire or stationhouse and that with the possible exception of helmets and boots, the uniform of the fireman is the clothing in which he was attired when he responded to the call. The small amounts paid to the volunteers are simply a means of lessening the burden attached to membership in the department." (Id. at pp. 214-215.)
Under the reasoning of our 1957 opinion, the payment of $8 for each response to a fire call and an allowance of up to $200 for the purchase of boots cannot be considered a "`salary.
Accordingly, the exemption for "any volunteer firefighter who does not receive a salary" (§ 53227, subd. (c)) is applicable here. We thus conclude that a volunteer firefighter may serve on the board of directors of a fire protection district even though he receives $8 for each response to a fire call and an allowance of up to $200 from the district for the purchase of boots.
[1] All further statutory references are to the Government Code unless otherwise indicated.]
[2] It may be noted that a volunteer firefighter may be compensated in a number of different ways, some of which may be considered a "salary" and some not. (See §§ 38611, 50952, subd. (n); Lab. Code, § 3212; 66 Ops.Cal.Atty.Gen., supra, at p. 181; 62 Ops.Cal.Atty.Gen., supra, at p. 116; 51 Ops.Cal.Atty.Gen., supra, at p 127; 29 Ops.Cal.Atty.Gen., supra, at pp. 212, 215.) When the payment is based upon a response to a fire call, the lack of any compensation being paid is a possibility that is absent when a "salary" is paid. "Compensation" is the broader term and may typically include salaries, wages and other types of remuneration. (See 80 Ops.Cal.Atty.Gen. 119, 123 (1997).)