BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE ROY ASHBURN, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
 May a healthcare district advertise on a radio station where (1) the radio station is the only station that accepts advertising in the district's region, (2) one of the district's directors, who assumed office in 2001, became an employee of the radio station in 1997 as an engineer and talk show host, (3) for more than five years prior to 1997, the district advertised on the radio station, (4) the station has six employees, (5) the district director's compensation from the station exceeds 50 percent of his income, and (6) the district director does not have an ownership interest in the station or hold a supervisory or managerial position at the station?
 CONCLUSION
Under the "rule of necessity," a healthcare district may advertise on a radio station where (1) the radio station is the only station that accepts advertising in the district's region, (2) one of the district's directors, who assumed office in 2001, became an employee of the radio station in 1997 as an engineer and talk show host, (3) for more than five years prior to 1997, the district advertised on the radio station, (4) the station has six employees, (5) the district director's compensation from the station exceeds 50 percent of his income, and (6) the district director does not have an ownership interest in the station or hold a supervisory or managerial position at the station.
 ANALYSIS
Government Code section 1090[1] provides:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
We are asked to determine whether the prohibition contained in section 1090 would prevent a healthcare district from advertising on a radio station where one of the directors of the district is an employee of the radio station. The district[2] operates a critical access facility ("hospital") that serves several rural communities in a remote area of the state. The district is governed by an elected five-member board of directors.[3] One of the district's directors has been an employee of the radio station as a talk show host and engineer since 1997, and he became a district director in January 2001. The radio station has a total of six employees and is the only station that accepts advertising in the district's region. The district director does not have an ownership interest in the radio station and does not hold a supervisory or managerial position at the station. The director's compensation from the radio station exceeds 50 percent of his income. For at least five years prior to 1997, the district advertised on the radio station. We conclude that pursuant to the "rule of necessity," the district may advertise on the radio station under these particular circumstances.
Section 1090 generally prohibits public officers from being financially interested in contracts made by them in their official capacity or made by boards or commissions of which they are members. (87 Ops.Cal.Atty.Gen. 23, 24 (2004); 69 Ops.Cal.Atty.Gen. 255 (1986).) "[T]he prohibited act is the making of a contract in which the official has a financial interest." (People v. Honig (1996) 48 Cal.App.4th 289, 333.) "Put in ordinary, but nonetheless precise terms, an official has a financial interest in a contract if he might profit from it." (Ibid.; accord, People v. Gnass (2002) 101 Cal.App.4th 1271,1288, fn. 6.)
In 85 Ops.Cal.Atty.Gen. 34, 38 (2002), we described the scope of section 1090 in the following terms:
 "The purpose of section 1090 `is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear upon an official's decision . . . .' [Citations.] Section 1090 is to be interpreted broadly to cover not only direct interests but also indirect interests. `California courts have . . . consistently voided . . . contracts where the public officer was found to have an indirect interest therein.' [Citations.] As we have previously noted, section 1090 is to be `strictly enforced.' [Citations.] In Fraser-Yamor Agency, Inc. v. County of Del Norte, supra, 68 Cal.App.3d 201, the court found a proscribed financial interest even though the officer would not directly benefit from the terms of the contract; it was ruled significant that the contract would contribute to the financial health of the contracting party with which the officer was associated. (Id. at pp. 214-215.)" (Fn. omitted.)
When section 1090 is applicable to one member of the governing body of a public entity, the prohibition cannot be avoided by having the interested member abstain; the entire governing body is precluded from entering into the contract. (Thomson v. Call (1985) 38 Cal.3d 633, 647-649; Stigall v. City of Taft (1962)58 Cal.2d 565, 569; City of Imperial Beach v. Bailey (1980)103 Cal.App.3d 191, 197; 86 Ops.Cal.Atty.Gen. 138, 139 (2003); 70 Ops.Cal.Atty.Gen. 45, 48 (1987).) A contract that violates section 1090 is void and unenforceable. (Thomson v. Call, supra, 38 Cal.3d at p. 646.) The prohibition applies regardless of whether the terms of the contract are fair and equitable. (Id. at pp. 646-649.)
Here, the advertising "contract"[4] would contribute to the financial health of the radio station and thus indirectly benefit the district director who is the radio station employee, as he derives most of his income from his employment at the station. He would have a financial interest in the contract that would be made between his employer and the district board of which he is a member.
While the district director would have a financial interest in the advertising contract, we note that the Legislature has expressly defined certain financial interests as "remote interests" and "noninterests" that, if applicable, allow a contract to be executed despite section 1090's prohibition. If a "remote interest" is present, as defined in section 1091, the contract may be made if the officer (1) discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the entity's official records, and (3) the officer completely abstains from any participation in the making of the contract. (See 87 Ops.Cal.Atty.Gen., supra, at pp. 25-26; 83 Ops.Cal.Atty.Gen. 246, 248 (2000); 78 Ops.Cal.Atty.Gen., supra, at pp. 235-237; 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) If a "noninterest" is present, as defined in section 1091.5, the contract may be made without the officer's abstention, and generally a noninterest does not require disclosure. (See City of Vernon v. Central Basin Mun. Water. Dist. (1999)69 Cal.App.4th 508, 515; 83 Ops.Cal.Atty.Gen., supra, at p. 247; 78 Ops.Cal.Atty.Gen. 362, 369-370 (1995).)
The only exceptions that merit any discussion in the circumstances presented are the "remote interest" categories specified in subdivisions (b)(2), (b)(3), and (b)(14) of section 1091, which provide:
 "(b) As used in this article, `remote interest' means any of the following:
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(2) That of an employee or agent of the contracting party, if the contracting party has 10 or more other employees and if the officer was an employee or agent of that contracting party for at least three years prior to the officer initially accepting his or her office and the officer owns less than 3 percent of the shares of stock of the contracting party; and the employee or agent is not an officer or director of the contracting party and did not directly participate in formulating the bid of the contracting party.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(3) That of an employee or agent of the contracting party, if all of the following conditions are met:
 "(A) The agency of which the person is an officer is a local public agency located in a county with a population of less than 4,000,000.
"(B) The contract is competitively bid and is not for personal services.
 "(C) The employee or agent is not in a primary management capacity with the contracting party, is not an officer or director of the contracting party, and holds no ownership interest in the contracting party.
"(D) The contracting party has 10 or more other employees.
 "(E) The employee or agent did not directly participate in formulating the bid of the contracting party.
"(F) The contracting party is the lowest responsible bidder.
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(14) That of a person owning less than 3 percent of the shares of a contracting party that is a for-profit corporation, provided that the ownership of the shares derived from the person's employment with that corporation."
Here, the district director has been an employee of the radio station for at least three years prior to his becoming a director, he has no ownership interest in the station and is not an officer or director of the station, and he would not participate in negotiating the advertising contract. However, he is one of just six persons employed by the radio station and therefore his interest would not meet all of the conditions of either subdivisions (b)(2) or (b)(3) of section 1091.
As for subdivision (b)(14) of section 1091, it concerns a financial interest based upon ownership, not upon employment. Although the permissible ownership interest of less than 3 percent of a company's shares must be derived from the person's employment with the company, the person must be a former employee rather than a current employee. If a current employment relationship could qualify under this subdivision, the other conditions specified in subdivisions (b)(2) and (b)(3) of the statute could easily be rendered meaningless, depending upon the circumstances.
Having found that no "remote interest" would be applicable here, we turn to the "rule of necessity." Under this rule, a contract may be executed even though it would otherwise violate the terms of section 1090. (See 78 Ops.Cal.Atty.Gen., supra, at pp. 372-373 [city council may contract with sheriff to provide law enforcement services to city while sheriff's deputy chief is council member]; 76 Ops.Cal.Atty.Gen. 118, 121-123 (1993) [city council may contract with council member for cable television service].) In Eldridge v. Sierra View Local Hospital District, supra, 224 Cal.App.3d 311, the court summarized the rule as follows:
 "The rule of necessity provides that a governmental agency may acquire essential goods or services despite a conflict of interest, and in nonprocurement situations it permits a public officer to carry out the essential duties of his/her office despite a conflict of interest where he/she is the only one who may legally act. The rule ensures that essential government functions are performed even where a conflict of interest exists. [Citations.]" (Id. at p. 321.)
As mentioned in Eldridge, two different situations are covered by the rule of necessity. The procurement situation is the one with which we are concerned here, and it has been found applicable only "in extreme cases of emergency, or where no alternative source of supply of goods or services existed. [Citations.]" (59 Ops.Cal.Atty.Gen. 604, 619, fn. 18 (1976).) In 42 Ops.Cal.Atty.Gen. 151, 156 (1963), we discussed an example of "where no alternative source of supply of goods or services existed":
 ". . . In a few counties of small population there is only one mortuary and the funeral director is the coroner. Coroner cases in these counties are handled by the coroner's private mortuary and generally the accompanying funeral business is handled by that mortuary also. Since the coroner has no real choice about where to have the body held, it is not an abuse of his office to assign the body to his mortuary. Cf. Capital Gas Co. v. Young, 109 Cal. 140 (1895) (public utility required to furnish gas to city can collect on bill despite otherwise prohibited interest of mayor); Hotchkiss v. Moran, 109 Cal.App. 321, 323-324 (1930) (electric company). . . ."
In 69 Ops.Cal.Atty.Gen.102 (1986), we noted that "the `rule of necessity' is to reflect actual necessity after all possible alternatives have been explored." (Id. at p. 109, fn. 6.) The mere fact that a proposed arrangement might be more convenient is not sufficient to invoke the rule of necessity. (4 Ops.Cal.Atty.Gen. 264 (1944).)
Here, it is suggested by the healthcare district that it must "of necessity" advertise on the radio station since such advertising is essential for the district to provide its medical services to all the residents of the area. We are informed that at the district's hospital, certain physicians and services, including flu-shots, children's immunization, and respiratory and diabetes clinics, are available only periodically and are subject to scheduling changes. Radio advertising would allow the district to convey information concerning the availability of these and other services to the public in an efficient, cost effective, and timely manner.
As for other media outlets, such as newspapers, billboards, and television, we are informed that two local newspapers are published on a weekly basis and that there are no local television stations in the area. We are further informed that many of the people served by the hospital district are elderly persons who seldom leave their residences and who listen to the radio station in question.
Assuming these facts to be true, we believe that the rule of necessity would be applicable as long as no other facts would prevent a finding of "actual necessity after all possible alternatives have been explored." (69 Ops.Cal.Atty.Gen., supra, at p. 109, fn. 6.) We point out that all relevant circumstances must be evaluated by the hospital district before invoking the rule. Significantly, when the rule is applied, the board member with the financial interest must abstain from any participation in the making of the contract. (69 Ops.Cal.Atty.Gen., supra, at p. 112 [school board trustee abstention]; 67 Ops.Cal.Atty.Gen.[5]
369, 378 (1984) [board member abstention].)
In answer to the question presented, we conclude that under the rule of necessity, a healthcare district may advertise on a radio station where (1) the radio station is the only station that accepts advertising in the district's region, (2) one of the district's directors, who assumed office in 2001, became an employee of the radio station in 1997 as an engineer and talk show host, (3) for more than five years prior to 1997, the district advertised on the radio station, (4) the station has six employees, (5) the district director's compensation from the station exceeds 50 percent of his income, and (6) the district director does not have an ownership interest in the station or hold a supervisory or managerial position at the station.
[1] Unless otherwise specified, all section references hereafter are to the Government Code.
[2] Healthcare districts and hospital districts are governed by The Local Health Care District Law (Health Saf. Code, §§ 32000-32492; "District Law"). The principal purpose of such districts is to establish, maintain, and operate healthcare facilities. (See Health Saf. Code, §§ 32121, 32125; Talley v. Northern San Diego Hosp. Dist. (1953) 41 Cal.2d 33, 40; 55 Ops.Cal.Atty.Gen. 375, 376 (1972).)
[3] A director of a healthcare district is covered by section 1090's prohibition. (See Eldridge v. Sierra View Local Hospital District (1990) 224 Cal.App.3d 311, 320; 87 Ops.Cal.Atty.Gen. 92, 93 (2004); 75 Ops.Cal.Atty.Gen. 20, 23 (1992).) Section 1090 is inapplicable to hospital and healthcare district officers under certain conditions that are set forth in Health and Safety Code section 32111. As these conditions concern district officers who are professional staff members, they are not relevant here.
[4] In the described circumstances, a "contract" would undoubtedly be executed for purposes of section 1090. (See 84 Ops.Cal.Atty.Gen. 34, 36-37 (2001); 78 Ops.Cal.Atty.Gen. 230, 234 (1995); 75 Ops.Cal.Atty.Gen., supra, at pp. 21-23.)
[5] Where, because of the rule of necessity, the making of the contract is not prohibited by section 1090, abstention by the board member having the conflict would also satisfy the requirements of the Political Reform Act of 1974 (§§ 81000-91015) and common law principles. (78 Ops.Cal.Atty.Gen., supra, at p. 374; 73 Ops.Cal.Atty.Gen. 191, 196 (1990); 70 Ops.Cal.Atty.Gen. 157, 162 (1987).) The Political Reform Act of 1974 generally prohibits a public official from participating in the making of a governmental decision in which he or she has a financial interest. (See §§ 87100, 87103; 74 Ops.Cal.Atty.Gen. 82, 86 (1991); 70 Ops.Cal.Atty.Gen., supra, at p. 46.) Under general common law principles, public officers are strictly required to avoid placing themselves in positions in which personal interests may come into conflict with their duties to the public. (Noble v. City of Palo Alto (1928) 89 Cal.App. 47, 51-52; 74 Ops.Cal.Atty.Gen., supra, at p. 84, fn. 3; 70 Ops.Cal.Atty.Gen., supra, at p. 47.) California courts have traditionally predicated conflict of interest decisions on the dual basis of statutory restrictions and public policy constraints evolved from the common law. (46 Ops.Cal.Atty.Gen. 74, 77 (1965).)