TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

| | : | |
|---|---|---|
| OPINION | : | No. 17-1001 |
| | : | |
| of | : | August 23, 2018 |
| | : | |
| XAVIER BECERRA | : | |
| Attorney General | : | |
| | : | |
| DIANE EISENBERG | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE TIMOTHY S. GRAYSON, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:

May a person simultaneously serve as a member of the Concord City Council and as the Contra Costa County Superintendent of Schools?

CONCLUSION

A person may not simultaneously serve as a member of the Concord City Council and as the Contra Costa County Superintendent of Schools.

1

ANALYSIS

The City of Concord ("Concord") is wholly located within Contra Costa County. Concord is a general law city that is governed by a city council comprising five elected members, each of whom serves a four-year term.[1] The city council has appointed a city manager who is responsible for management functions of the city.[2] Concord lies entirely within the boundaries of the Mt. Diablo Unified School District ("Mt. Diablo School District"), which also includes certain other cities, as well as unincorporated areas, in Contra Costa County.[3]

The California Constitution calls for the election or appointment of a superintendent of schools and a board of education for each county.[4] The Contra Costa County Superintendent of Schools is elected, as is the county's five-member Board of Education.[5] Together, the superintendent and board lead the Contra Costa County Office of Education.[6] In addition to the Mt. Diablo School District, there are 17 other kindergarten-through-12th grade public school districts in Contra Costa County under the jurisdiction of the county office of education.[7]

---

[1] City of Concord, "City Government Overview," <http://www.cityofconcord.org/page.asp?pid=5001> (as of Apr. 23, 2018). Each year, the council selects one of its members to serve as mayor and another as vice-mayor. (*Ibid*.)

[2] *Ibid*.; see also Gov. Code, § 34851 (city manager form of government may be established by ordinance); Concord Mun. Code, § 2.10.120, subd. (a) (providing for appointment of city manager).

[3] City of Concord, "Education and Literacy," <http://www.cityofconcord.org/page.asp?pid=6020> (as of Apr. 23, 2018); MapTechnica, "Mt. Diablo USD Boundary Map," <https://www.maptechnica.com/school-district-map/CA/Mount+Diablo+Unified+School+District/unsd/0626370> (as of Apr. 23, 2018).

[4] Cal. Const., art. IX, §§ 3, 7; see also Ed. Code, § 1000.

[5] Contra Costa County Office of Education, "Contra Costa County Office of Education Facts at a Glance," <http://www.cccoe.k12.ca.us/UserFiles/Servers/Server_1077313/File/About/Education Facts & Statistics/GeneralAgencyFactSheet.pdf> (as of Apr. 23, 2018).

[6] *Ibid*. "The county superintendent is the head of the county office [of education]; the county board of education is its governing board." (*Today's Fresh Start, Inc. v. L.A. County Off. of Ed.* (2013) 57 Cal.4th 197, 207, fn. 4.)

[7] Contra Costa County Office of Education, "County School Districts," <https://www.cccoe.k12.ca.us/district_resources/county_school_districts> (as of Apr. 23, 2018).

17-1001

We are asked to determine whether a member of the Concord City Council may simultaneously serve as the Contra Costa County Superintendent of Schools. We conduct this inquiry with reference to the doctrine of incompatible offices, which prohibits a person from concurrently holding two public offices if the performance of the duties of either office could have a significant adverse effect on the other.[8] "The doctrine springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[9]

We find that simultaneously holding the positions of city council member and county superintendent of schools of the county in which the city is located would indeed run afoul of the incompatible offices prohibition. Accordingly, we conclude that a member of the Concord City Council may not also serve, at the same time, as the Contra Costa County Superintendent of Schools. We explain our reasoning and conclusion in greater detail below.

Government Code Section 1099

For many years, the doctrine of incompatible offices was developed and expressed only in common law. In 2005, the Legislature codified the common law rule by enacting Government Code section 1099.[10] Subdivision (a) of that section provides:

> (a) A public officer, including, but not limited to, an appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible. Offices are incompatible when any of the following circumstances are present, unless simultaneous holding of the particular offices is compelled or expressly authorized by law:
>
> (1) Either of the offices may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over the other office or body.

---

[8] 68 Ops.Cal.Atty.Gen. 337, 339 (1985); accord, 93 Ops.Cal.Atty.Gen. 104, 108 (2010); 87 Ops.Cal.Atty.Gen. 153, 154 (2004); see also *Mott v. Horstmann* (1950) 36 Cal.2d 388, 391 (doctrine applies where the functions of the offices concerned are inherently inconsistent); *Eldridge v. Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 319 (1990) (*Eldridge*) (same).)

[9] 68 Ops.Cal.Atty.Gen., *supra*, at p. 339; see also 63 Ops.Cal.Atty.Gen. 623, 625 (1980); 17 Ops.Cal.Atty.Gen. 129, 130 (1951).

[10] Added by Stats. 2005, ch. 254, § 1, eff. Jan. 1, 2006.

(2) Based on the powers and jurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices.

(3) Public policy considerations make it improper for one person to hold both offices.[11]

In an uncodified section of the bill that enacted Government Code section 1099, the Legislature declared that the act was not intended to expand or contract the common law prohibition against holding incompatible public office, and that interpretation of the act "shall be guided by judicial and administrative precedent concerning incompatible public offices developed under the common law."[12] Thus, we look both to Government Code section 1099 and to precedent established under the common law in conducting our analysis.

<u>Public Offices</u>

We observe initially that the doctrine of incompatible offices applies only to public offices, and not to positions of employment.[13] We have previously characterized a public

---

[11] Gov. Code, § 1099, subd. (a). The rest of Government Code section 1099 consists of subdivisions (b) through (f), which provide:

(b) When two public offices are incompatible, a public officer shall be deemed to have forfeited the first office upon acceding to the second. This provision is enforceable pursuant to Section 803 of the Code of Civil Procedure.

(c) This section does not apply to a position of employment, including a civil service position.

(d) This section shall not apply to a governmental body that has only advisory powers.

(e) For purposes of paragraph (1) of subdivision (a), a member of a multimember body holds an office that may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over another office when the body has any of these powers over the other office or over a multimember body that includes that other office.

(f) This section codifies the common law rule prohibiting an individual from holding incompatible public offices.

[12] Stats. 2005, ch. 254, § 2.

[13] Gov. Code, § 1099, subds. (a), (c); *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 639-640 (*Rapsey*); *Eldridge, supra*, 224 Cal.App.3d at p. 319 (doctrine does

4

office, for purposes of the doctrine, as "a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary;[14] (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state."[15] The authority to make policy or to exercise independent judgment and discretion is also the hallmark of an officer, as opposed to an employee.[16] Under Government Code section 1099, subdivision (a), "public office" expressly includes membership on a governmental board or body.[17]

---

not apply where one position is a public office and the other an employment). Whether a particular position is an office or one of employment depends not upon its formal designation, but rather upon its powers, duties, and functions. (See *Rapsey*, *supra*, 16 Cal.2d at pp. 639-640; 76 Ops.Cal.Atty.Gen. 244, 246, 247 (1993); 68 Ops.Cal.Atty.Gen., *supra*, at p. 340.) A position may be a public office for some purposes but not for others. (*Neigel v. Sup. Ct.* (1977) 72 Cal.App.3d 373, 378; 87 Ops.Cal.Atty.Gen. 54, 57 (2004).)

[14] Although an office must have some permanence and continuity, "these terms do not refer to the tenure of the appointed officer, but apply to the permanency and continuity of the office itself." (*Cerini v. City of Cloverdale* (1987) 191 Cal.App.3d 1471, 1478.)

[15] 68 Ops.Cal.Atty.Gen., *supra*, at p. 342; accord, 95 Ops.Cal.Atty.Gen. 77, 78 (2012); 93 Ops.Cal.Atty.Gen. 144, 148 (2010); 93 Ops.Cal.Atty.Gen., *supra*, at p. 105; 82 Ops.Cal.Atty.Gen. 83, 84 (1999); 74 Ops.Cal.Atty.Gen. 116, 118 (1991); see also *Moore v. Panish* (1982) 32 Cal.3d 535, 545 (public office is not transient, and requires delegation to the office of some portion of the sovereign functions of government). The state's sovereign powers include police powers, acquiring and disposing of public property, incurring financial obligations on behalf of the public agency, and acting on behalf of the public agency in business or political matters. (*Schaefer v. Super. Ct.* (1952) 113 Cal.App.2d 428, 432-433.)

[16] 94 Ops.Cal.Atty.Gen. 1, 2-3, fn. 10 (2011); 93 Ops.Cal.Atty.Gen. 110, 114 (2010); 87 Ops.Cal.Atty.Gen. 142, 145 (2004).

[17] See also 68 Ops.Cal.Atty.Gen., *supra*, at p. 344 (citing cases decided under the common law doctrine declaring that members of governing boards of public districts or entities are public officers).

The position of city council member is established by law[18] and is continuing,[19] and a city council member is a trustee of the public welfare.[20] A city council is a governmental body with sovereign powers, including the authority to enact ordinances; levy taxes; license businesses; contract for services; purchase, control, and dispose of real and personal property; acquire property by eminent domain; erect buildings for municipal purposes; regulate buildings and construction; and provide for water, public utilities, and public works.[21] A council member thus holds a public office, as we have concluded on numerous prior occasions.[22] Accordingly, a Concord City Council member is a public officer.[23]

We have also previously concluded that the position of county superintendent of schools is a public office,[24] and we do not depart from that conclusion here. The

[18] Gov. Code, § 36501, subd. (a) (government of general law city is vested in city council of at least five members).

[19] Gov. Code, § 36503; *Denio v. City of Huntington Beach* (1943) 22 Cal.2d 580, 590, overruled on other grounds by *Fracasse v. Brent* (1972) 6 Cal.3d 784, 790-791.

[20] *L.A. County v. City Council of City of Lawndale* (1962) 202 Cal.App.2d 20, 24.

[21] Gov. Code, §§ 37100, 37100.5, 37101, 37103, 37202, 37350-37352, 38601, subd. (b), 38660, 38730, 38742, subds. (a), (b), 39792, 40401.

[22] See, e.g., 98 Ops.Cal.Atty.Gen. 94, 96 (2015); 91 Ops.Cal.Atty.Gen. 25, 26 (2008); 85 Ops.Cal.Atty.Gen. 199, 200 (2002); 82 Ops.Cal.Atty.Gen. 74, 76 (1999); 76 Ops.Cal.Atty.Gen. 38, 40 (1993); 75 Ops.Cal.Atty.Gen. 10, 13 (1992); 37 Ops.Cal.Atty.Gen. 21, 22, fn. 1 (1961).

[23] The fact that Concord has an appointed city manager who acts as the administrative head of the city's government does not alter this conclusion. While the city manager has substantial responsibilities (see, e.g., Concord Mun. Code, § 2.10.140, subds. (1)-(3), (6), (8), (10), (13); see also Gov. Code, § 34856), and also occupies a public office for purposes of the incompatibility doctrine (see 81 Ops.Cal.Atty.Gen. 304, 306-307 (1998); 80 Ops.Cal.Atty.Gen. 74, 76 (1997); 51 Ops.Cal.Atty.Gen. 183, 184 (1968)), the Concord City Council members oversee the city manager and retain legislative and policy-making authority.

[24] See 74 Ops.Cal.Atty.Gen., *supra*, at p. 118; 30 Ops.Cal.Atty.Gen. 125, 126 (1957). We note that in one prior opinion, Opinion Number 85-603 (dated August 30,1985), we stated that a county superintendent of schools is a public employee—and thus not a public officer—for purposes of the incompatible offices rule. (See 68 Ops.Cal.Atty.Gen. 240, 244, fn. 5 (1985).) Our cited authority for that statement was a 1979 opinion, Opinion Number 79-715, cited as 62 Ops.Cal.Atty.Gen. 615 (1979). However, our statement in Opinion Number 85-603 was inaccurate: Opinion Number 79-715 concerned the position of school district superintendent, not county superintendent of schools. Moreover, the

6

superintendent position is provided for by constitutional provision and statute,[25] and is continuing and permanent, with incumbents succeeding each other. County superintendents of schools are designated by law both as "civil executive officers" and as "county officers,"[26] and have many statutorily prescribed duties and powers that "are for the public benefit and clearly constitute an exercise of the sovereign power of the state."[27] For example, a county superintendent must generally oversee the schools of the county, maintain fiscal oversight of each school district in the county, and enforce the course of study.[28] In addition, a county superintendent has the authority to audit the expenditures and internal controls of school districts and charter schools, conduct studies related to future school conditions and needs, enter into specified contracts, and employ certificated and classified county school personnel.[29] The county superintendent must open and maintain a school if a school district under the superintendent's jurisdiction has sufficient funds to operate the school but fails to do so.[30]

The county superintendent of schools is also ex officio secretary and executive officer of the county board of education.[31] Although a county board of education directs or must approve some of the county superintendent's activities,[32] we find it indisputable that a county superintendent of schools performs important governmental functions requiring the exercise of independent judgment and discretion. A county superintendent is vested with broad authority to carry on, and expend funds for, activities and programs that

conclusion reached in Opinion No. 79-715—namely, that the superintendent of a school district does not hold a public office under the incompatible offices doctrine (62 Ops.Cal.Atty.Gen., *supra*, at pp. 617-619)—was itself rejected by a later opinion issued in December, 1985. (See 68 Ops.Cal.Atty.Gen., *supra*, at p. 350.)

[25] Cal. Const., art. IX, § 3; Ed. Code, § 1200 et seq.

[26] Gov. Code, §§ 1001, 24000, subd. (k).

[27] 74 Ops.Cal.Atty.Gen., *supra*, at p. 118; see generally Ed. Code, § 1240 et seq. (duties, responsibilities, and general powers of county superintendent of schools).

[28] Ed. Code, § 1240, subds. (a), (b), (h).

[29] Ed. Code, §§ 1241.5, 1250-1251, 1258-1259, 1260, subd. (a), 1276, 1293, 1311; 72 Ops.Cal.Atty.Gen. 25, 25-26, 29-31 (1989).

[30] Ed. Code, § 1256; 74 Ops.Cal.Atty.Gen., *supra*, at p. 118.

[31] Ed. Code, § 1010.

[32] See, e.g., Ed. Code, §§ 1260, subd. (a), (superintendent conducts studies with approval of, or as determined by, county board of education); 1294, 1295 (leaves of absence granted to employees require board approval).

he or she determines to be necessary or desirable to meet the needs of the community, so long as the activities or programs are not in conflict with or inconsistent with law.[33]

Having affirmed that the positions of city council member and county superintendent of schools are both public offices for purposes of Government Code section 1099, we must determine whether holding the two offices simultaneously would be prohibited under the statute.[34]

Incompatibility

Pursuant to section 1099 and established precedent, a person may not simultaneously hold two public offices if either office exercises a supervisory, auditing, or removal power over the other, if there is any significant clash of duties or loyalties between the offices, or if the dual office holding would be improper for reasons of public policy.[35] It is well established that a "past or present conflict in the performance of the duties of either office is not required for a finding of incompatibility; rather, it is sufficient that a conflict may occur "in the regular operation of the statutory plan."[36] Nor is it necessary that the clash of duty exist in all or in the greater part of the official functions; it is enough when the holder of the two offices cannot in every instance discharge the duties of each.[37]

---

[33] Ed. Code, §§ 35160-35160.2. These provisions also apply to county boards of education and school districts. (*Id.*; see also 93 Ops.Cal.Atty.Gen. 63, 65-68 (2010).)

[34] We have previously concluded that the offices of city council member and school district trustee are incompatible (65 Ops.Cal.Atty.Gen. 606, 609 (1982); see also 73 Ops.Cal.Atty.Gen. 354, 355, 357 (1990)), as are the offices of county superintendent of schools and member of the State Board of Education (74 Ops.Cal.Atty.Gen., *supra*, at p. 121), but we have not previously considered the offices at issue here in relation to each other.

[35] Gov. Code, § 1099, subd. (a); *Rapsey*, *supra*, 16 Cal.2d at p. 642; 90 Ops.Cal.Atty.Gen. 24, 26 (2007).

[36] 87 Ops.Cal.Atty.Gen., *supra*, at p. 145, quoting 66 Ops.Cal.Atty.Gen. 176, 177 (1983); accord, 87 Ops.Cal.Atty.Gen., *supra*, at p. 154; 75 Ops.Cal.Atty.Gen. 112, 116 (1992) (lack of actual disputes or negotiations between two public entities immaterial to application of doctrine); 63 Ops.Cal.Atty.Gen., *supra*, at p. 624 (absence of significant interactions between city and airport district not determinative; potential interaction sufficient to render offices incompatible). The incompatible offices prohibition "does not await the occurrence of an actual clash before taking effect, but intercedes to prevent it." (93 Ops.Cal.Atty.Gen., *supra*, at p. 111.)

[37] *Rapsey*, *supra*, 16 Cal.2d at pp. 641, 642.

Thus, only "one potential significant clash of duties or loyalties is necessary to make offices incompatible."[38]  Abstention when a conflict arises does not cure the incompatibility or obviate the effects of the doctrine.[39]

The Legislature may abrogate the rule against holding incompatible public offices for any offices that it chooses.[40]  However, we have found no express or implied abrogation of the rule with respect to the offices at issue here.  Therefore, we must further examine the functions and duties of these offices to see if dual office holding would be prohibited.[41]

Neither a city council nor a county superintendent of schools exercises supervisory or removal power over the other.  However, we perceive a number of areas in which one or more significant clash of duties or loyalties between the offices of city council member and county superintendent could arise: direct interactions between a city council and a county superintendent of schools; a county superintendent's supervisory and auditing authority over a school district, or districts, that serve the city; and relationships between a county board of education and a city council that may be attributed to the county superintendent of schools.  We will examine each of these areas in turn.

---

[38] 85 Ops.Cal.Atty.Gen. 60, 61 (2002); see also 37 Ops.Cal.Atty.Gen., *supra*, at p. 22.

[39] 85 Ops.Cal.Atty.Gen. 239, 240 (2001); 66 Ops.Cal.Atty.Gen., *supra*, at pp. 177-178); see also 63 Ops.Cal.Atty.Gen. 710, 715-716 (1980).

[40] Gov. Code, § 1099, subd. (a); *American Canyon Fire Protection Dist. v. County of Napa*, 141 Cal.App.3d 100, 104 (1983); *McClain v. County of Alameda* (1962) 209 Cal.App.2d 73, 79; 95 Ops.Cal.Atty.Gen. 130, 134 (2012); 87 Ops.Cal.Atty.Gen., *supra*, at p. 60; 63 Ops.Cal.Atty.Gen. 748, 750 (1980).

[41] As Government Code section 1099, subdivision (b) provides, the consequence of holding incompatible offices is that the person is deemed to have forfeited the first office upon acceding to the second.  Thus, a person's assumption of the second incompatible office has the effect of an automatic resignation from, or vacation of, the first office. (*Rapsey*, *supra*, 16 Cal.2d at p. 644; 98 Ops.Cal.Atty.Gen., *supra*, at p. 96; 95 Ops.Cal.Atty.Gen. 67, 73, fn. 29 (2012); 85 Ops.Cal.Atty.Gen., *supra*, at p. 61; 66 Ops.Cal.Atty.Gen., *supra*, at p. 178; 38 Ops.Cal.Atty.Gen. 121, 125 (1961).)  As Government Code section 1099, subdivision (b) further provides, the forfeiture of office is enforceable under Code of Civil Procedure section 803.  An action filed under Code of Civil Procedure section 803 is known as a quo warranto action, and is the proper legal means for testing title to public office.  (*Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225-1226 (2001); 93 Ops.Cal.Atty.Gen., *supra*, at p. 145; 81 Ops.Cal.Atty.Gen. 207, 208 (1998).)

—Direct Interactions

First, there are various situations in which the parties may engage in direct transactions or contracts with each other. For example, a city council may contract with the county superintendent of schools for the performance by local health agency personnel of duties relating to the health supervision of school buildings and pupils.[42] As another example, the county superintendent is authorized to enter into agreements to provide audiovisual services and equipment, and to license certain non-educational software, to a variety of entities, including a city.[43] It is also possible that the city might wish to buy certain items of personal property belonging to the county office of education that the county superintendent is authorized to sell.[44] A city council member who is also the county superintendent of schools would be subject to conflicting loyalties regarding the terms of such transactions.[45]

In addition, a county superintendent of schools and a city are authorized to enter into agreements with each other under the Joint Exercise of Powers Act, in order to jointly exercise a power they have in common.[46] Negotiating any such agreement, even if for the purpose of collaboration, would also entail a division of loyalties for a dual office holder.[47]

—County Superintendent's Authority Over Schools Within the City

The potential for even more frequent and pervasive conflict flows from a county superintendent's jurisdiction over schools and school districts that serve a city's residents. The condition, resources, and reputation of a city's schools and school districts are typically

---

[42] Health & Saf. Code, § 101425.

[43] Ed. Code, §§ 1251, 1277.

[44] See Ed. Code, § 1279.

[45] See 97 Ops.Cal.Atty.Gen. 50, 54 (2014) (power of two entities with common territory to enter into contracts presents potential conflict for someone who is public official of both entities); 68 Ops.Cal.Atty.Gen., *supra*, at p. 351.

[46] See Gov. Code, § 6500 et seq. The definition of "public agency" for the purposes of entering into agreements to exercise joint powers expressly includes, inter alia, a county board of education, a county superintendent of schools, and a city. (Gov. Code, § 6500.) A joint powers agency is a public entity separate from the parties to the agreement. (Gov. Code, § 6507.)

[47] 68 Ops.Cal.Atty.Gen. 171, 173 (1985), quoting Cal.Atty.Gen., Indexed Letter, No. IL 75-22 (Feb. 18, 1975) (conflict results from fact that same person sits on both sides of an agreement); 66 Ops.Cal.Atty.Gen., *supra*, at p. 179.

of great concern to the city council, and are directly related to matters within the council's purview, such as economic development, infrastructure, traffic, recreation, and cultural affairs.[48]  While school districts have their own governing boards,[49] "county school superintendents also have an integral role in the operation of local districts."[50]

In this connection, as alluded to above, the county superintendent of schools has significant authority "to act as watchdog for each school district's fiscal affairs."[51]  The county superintendent must analyze, and approve or disapprove, the budget adopted by each school district,[52] and must also approve all expenditures.[53]  The superintendent has auditing authority over school districts, and may audit the expenditures and internal controls of any school district in the county if there is reason to believe that fraud, misappropriation of funds, or other illegal fiscal practices have occurred.[54]  The county superintendent also investigates evidence that a school district is in financial distress, and may determine that a district should receive a negative interim financial certification.[55]

---

[48] The Concord City Council has a standing "Youth and Education Committee," consisting of two council members, which makes recommendations to the full council for actions on items the committee has considered.  A staff report for one of the Youth and Education Committee meetings indicates that the Concord City Council has invested in capital improvements to enhance the safety of walking and bicycling routes to, and in the vicinity of, city schools within the Mt. Diablo School District.  (City of Concord, "Staff Report, Regular Meeting of the Youth & Education Committee for Monday, Mar. 20, 2017," p. 2, <http://www.cityofconcord.org/citygov/agendas/committees/rca/2017/03202017.pdf> [as of Apr. 23, 2018].)  This report also notes that the Concord City Council and the governing board of the Mt. Diablo School District annually hold a joint meeting to discuss matters of mutual interest.  (*Id*. at p. 1.)

[49] Ed. Code, §§ 35010, 35012.

[50] *Polster v. Sacramento County Off. of Ed.* (2009) 180 Cal.App.4th 649, 659 (*Polster*); see also Ed. Code, § 35160.1, subd. (b).

[51] *Polster*, *supra*, 180 Cal.App.4th at p. 661.

[52] Ed. Code, § 42127, subds. (c), (d); see also Contra Costa County Office of Education, "Superintendent," <https://www.cccoe.k12.ca.us/superintendent/county_superintendent_of_schools> (as of Apr. 23, 2018) (stating that the county's superintendent of schools is responsible for monitoring and approving all school district budgets).

[53] Ed. Code, § 42635.

[54] Ed. Code, § 1241.5, subds. (a), (b).

[55] Ed. Code, §§ 42127.6, subd. (a)(1), 42131.  The county superintendent also has specified responsibilities and powers with respect to a school district that is in financial

17-1001

In a similar vein, the county superintendent of schools plays an important role in ensuring the accountability of instructional programs. Every school district must adopt, and then annually update, a "local control and accountability plan" that includes goals and specific measures the district will implement in order to advance an array of state educational priorities for student achievement.[56] The county superintendent of schools must review, and either approve or disapprove, the plan for each district under his or her jurisdiction.[57]

Some of the actions described above, such as investigating a school district's finances for fraud and mismanagement, or failing to approve a district's accountability plan, could adversely affect a city's reputation and have other negative consequences for the city if schools within the city were involved. A county superintendent who is also an advocate for the city might not be able to remain free of bias in deciding whether or how such actions should be undertaken. We are mindful that the incompatible offices doctrine does not turn upon the integrity of the person concerned or his or her individual capacity to achieve impartiality, but rather "'applies inexorably if the offices come within it, no matter how worthy the officer's purpose . . . .'"[58]

A county superintendent's responsibility for the allocation of certain funds may also engender a clash of loyalties. Each county has a county school service fund,[59] which the county superintendent of schools uses to provide professional services for the coordination, among school districts, of educational program components such as courses of study, guidance services, health services, and school library services, and to provide those services and other financial assistance to districts that, because of size or location, cannot furnish satisfactory programs.[60] The county superintendent of schools may also utilize the

distress. (See Ed. Code, § 42127.6, subds. (a)(1)(A)-(a)(1)(G), (c), (e), (f), (j).)

[56] Ed. Code, §§ 52050.5, 52060-52065. A county superintendent of schools is separately required to develop an accountability plan for adoption by the county board of education. (Ed. Code, §§ 52066-52070.5.)

[57] Ed. Code, §§ 52070. The county superintendent may also be required to provide various forms of technical assistance to a school district. (Ed. Code, § 52071.) A school district's inadequate performance, according to specified criteria, may warrant direct intervention by the state Superintendent of Public Instruction. (Ed. Code, § 52072.)

[58] 68 Ops.Cal.Atty.Gen., *supra*, at p. 243, quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, p. 295.

[59] Ed. Code, § 1600. The monies in each county school service fund come from apportionments of the State School Fund. (Ed. Code, § 14043.)

[60] Ed. Code, § 1700; see also Ed. Code, §§ 1703, 1720, 1730, 1740, 1750, 1760, 1770.

county school service fund to provide temporary fund transfers, or additional apportionments, to any county school district or community college district under specified circumstances.[61] Separate from the county school service fund, each county superintendent is responsible for the allocation of property tax revenues dedicated to support special education programs,[62] and it appears that he or she has some discretion in the performance of that duty.[63] With respect to both the county school service funds and special education funds, a county superintendent of schools is required to maintain a county-wide perspective,[64] whereas, were a city council member in charge of these funds, that person might give greater attention to the needs of the city's residents and schools.

—Relationships Through the County Board of Education

Significant clashes of duties and loyalties with respect to the positions in question could also derive from actions taken by the county board of education[65] in which the county superintendent of schools, as the board's executive officer, is substantially involved. We have previously characterized the offices of county board of education member and county superintendent of schools as analogous offices in relation to the office of member of the

---

[61] Ed. Code, §§ 1602, 42621, 42622.

[62] Ed. Code, §§ 2570-2572. The administration of special education programs is governed by Education Code sections 56000 through 56885.

[63] As we have previously explained, "[n]o statute requires specific property tax revenues to fund particular special education programs, and the revenues are not tied to the special education program needs of particular pupils. Rather, [Education Code] section 2572 specifies only that special education property tax revenues must be allocated by a county superintendent of schools for 'special education programs.'" (89 Ops.Cal.Atty.Gen. 182, 185 (2006).)

[64] See, e.g., Ed. Code, § 56140, subd. (a) (county superintendent must develop a plan that "ensures that all individuals with exceptional needs residing within the county … will have access to appropriate special education programs and related services"); see also Ed. Code, § 56022 (defining "county office" to mean "county superintendent of schools").

[65] A member of a county board of education holds a public office for purposes of the incompatible offices prohibition. (79 Ops.Cal.Atty.Gen. 155, 157 (1996); 31 Ops.Cal.Atty.Gen. 170, 171 (1958).)

13

State Board of Education.[66]  In other situations, too, we have ascribed the interests and actions of a governing body to the officer or manager who carries out that body's policies.[67]

A county board of education may act as the county committee on school district organization,[68] and the Contra Costa County Board of Education acts in that capacity.[69]  A county committee also plays a significant role in the reorganization of school districts, which includes the formation and dissolution of districts, and the transfer of territory among districts.[70]  In addition to reorganizations initiated by the county committee itself, a reorganization may be initiated by a petition submitted by electors, or a resolution submitted by certain governing bodies, including a city council.[71]  A county committee must hold a hearing on the petition or resolution, and adopt a final recommendation to transmit to the State Board of Education.[72]  A county superintendent of schools has specific responsibilities in connection with school district reorganizations,[73] and also would be

---

[66] 74 Ops.Cal.Atty.Gen., *supra*, at pp. 120-121.

[67] See, e.g., 80 Ops.Cal.Atty.Gen., *supra*, at p. 78 (areas of conflict for a city council member just as applicable for a city manager); 67 Ops.Cal.Atty.Gen. 409, 414 (1984) (incompatibility of offices of general manager of county water district and member of county board of supervisors based on relationship between the water district governing board and the county board of supervisors); 66 Ops.Cal.Atty.Gen., *supra*, at p. 179 (fire protection district's ability to enter into certain contracts deemed a source of conflict for fire chief for purposes of incompatible offices analysis).

[68] Ed. Code, §§ 4000, 4020.  A county committee on school district organization formulates plans and recommendations for the organization of the school districts in the county.  (Ed. Code, § 35720; 68 Ops.Cal.Atty.Gen., *supra*, at p. 243.)

[69] Contra Costa County Office of Education, "County Board of Education," <https://www.cccoe.k12.ca.us/county_board/county_board_of_education> (as of Apr. 23, 2018) (board, as county committee, reviews changes in school district boundaries).

[70] Ed. Code, §§ 35511, 35512, 35705-35710, 35780-35784; 68 Ops.Cal.Atty.Gen., *supra*, at p. 242.  A school district reorganization generally requires the approval of the county committee on school organization, the State Board of Education, and a majority of the voters of the area.  (68 Ops.Cal.Atty.Gen., *supra*, at p. 241.)  Such a reorganization may have a significant impact on the local community.  For example, a reorganization may result in reassignments of students and staff, altered traffic patterns, and changes to the assets or diversity of the affected districts.

[71] Ed. Code, § 35721, subds. (a)-(c).

[72] Ed. Code, §§ 35721, subd. (d), 35722.

[73] Ed. Code, §§ 35520-35521, 35563, 35700.1, 35704, 35710, subd. (a), 35710.51,

14

17-1001

expected, as the board of education's executive officer, to advise the board sitting as the committee on school district organization.[74]  Hence, a county superintendent of schools who is also a city council member could find himself or herself in the untenable position of having to advise the county board of education on a proposal or stance he or she had already approved in his or her city council capacity.[75]  A dual office holder in this situation cannot maintain the loyalty owed to the board on the one hand and the city on the other.

A city council and a county board of education, along with its county superintendent, may also have different perspectives on the location of school sites.  A city's general plan, which must be adopted by the city council, incudes the location of educational facilities.[76]  The city's general plan may be at odds with the purposes of the county board of education and county superintendent.  Conversely, the county board of education, when establishing and locating community schools, may supersede city zoning ordinances.[77]  The county superintendent of schools, who is tasked with operating

---

35756, 35758, 35763.

[74] See 66 Ops.Cal.Atty.Gen., *supra*, at pp. 176, 179 (noting in a similar vein that a fire chief would be expected to advise fire protection district board on district reorganizations, district contracts, and other matters).

[75] Indeed, it appears that there were communications between the Concord City Council and the Contra Costa County Superintendent of Schools regarding a reorganization proposal in 2017.  A petition to split off part of the Mt. Diablo School District to form a new district had been submitted to the county office of education.  The proposed new district was to include some Concord neighborhoods and schools.  One issue that arose with respect to the proposal was whether a vote on the proposal, which would occur if the proposal was approved by the State Board of Education, should be held in the entirety of the existing Mt. Diablo School District, or only in the territory that would be encompassed by the proposed new district.  In June 2017, the Concord City Council approved a letter to the Contra Costa County Superintendent of Schools supporting the recommendation that the vote be held in the entire Mt. Diablo School District.  (See "Staff Report to Concord City Council" (June 13, 2017) <http://www.cityofconcord.org/pdf/citygov/agendas/council/2017/0613/9D.pdf> [as of Apr. 23, 2018]; "Minutes of Regular Meeting of the Concord City Council" (June 13, 2017), p. 3 <http://www.cityofconcord.org/citygov/agendas/council/minutes/2017/06132017.pdf> [as of Apr. 23, 2018].)  In this instance, the County Office of Education agreed with the position on a potential election taken by the Concord City Council, but that does not foreclose the potential for conflict between the role of county superintendent and that of city council member in this kind of situation.

[76] Gov. Code, §§ 65302, subd. (a), 65350, 65356.

[77] See 79 Ops.Cal.Atty.Gen., *supra*, at p. 158.  Enrollment in community schools, which

community schools,[78] would have an obvious interest in the site selection of such schools. This interest could clash with a city council member's interest in the preservation of the city's zoning regulations, so as to disqualify a person from concurrently holding both offices.[79]

Finally, a county board of education may, under certain circumstances, exercise some of the same powers that a city council does. Education Code section 1080 permits a county board of supervisors to transfer certain functions and powers to that county's board of education,[80] including the power of eminent domain and the power to enter into agreements.[81] Where a county board of education is authorized to exercise such powers, the board and the city could each condemn property of the other,[82] or both might wish to condemn the same property. As we have previously determined, the common ability to use eminent domain within a given territory results in a potential conflict for the officials invested with the power.[83] A county board of education would also have the express

---

may be established by the county board of education, includes students who have been expelled from a school district for serious offenses, or have been referred by a school attendance review board, or who are wards of the juvenile court. (Ed. Code, §§ 1980, 1981, subds. (a)-(c).) The county board of education is deemed to be a school district for purposes of maintaining a county community school (Ed. Code, § 1984), and the governing board of a school district "may render a city or county zoning ordinance inapplicable to a proposed use of property by the school district." (Gov. Code, § 53094, subd. (b); see also *San Jose Unified School Dist. v. Santa Clara County Off. of Ed.* (2017) 7 Cal.App.5th 967, 970-984, 984, fn. 9 [Government Code section 53094 does not authorize county boards of education to issue zoning exemptions for charter schools, but zoning exemptions invoked by county boards of education for community schools were appropriate under the court's construction of section 53094].)

[78] Ed. Code, § 1986.

[79] The Contra Costa County Office of Education operates a community school program at several sites within the county, though as of the date of this opinion, none is in Concord. (Contra Costa Office of Education, "Court and Community Schools: Golden Gate Community Schools," <https://www.cccoe.k12.ca.us/cms/One.aspx?portalId=1077397&pageId=2978892> [as of Apr. 23, 2018].)

[80] Ed. Code, § 1080.

[81] Ed. Code, §§ 1047, 1080, subd. (c); Gov. Code, § 23004, subd. (c).

[82] See Code Civ. Proc., § 1240.610 (a public body may condemn property of another public body where a superior use can be shown).

[83] 97 Ops.Cal.Atty.Gen., *supra*, at p. 54; 85 Ops.Cal.Atty.Gen., *supra*, at p. 201; 80 Ops.Cal.Atty.Gen. 242, 244 (1997); 65 Ops.Cal.Atty.Gen., *supra*, at p. 607; 37

authority, as does a city, to organize, promote, and conduct programs of community recreation.[84]  A board of education and a city having jurisdiction over the same territory, as is the case here, or contiguous territories, may jointly provide recreation,[85] or may compete with each other to do so.  Either way, the interests of a county superintendent of schools and a city council member could diverge.[86]  What is best for the county schools and the county as a whole may not be what is best for the city.

The examples above do not exhaust the possibilities for conflict, but they demonstrate that the concurrent holding of the offices at issue here would give rise to a multitude of actual and potential clashes of duties and loyalties "in the regular operation of the statutory plan."[87]  As noted at the outset, "only one significant clash of duties and loyalties is required to render offices incompatible."[88]  As a matter of public policy, too, "when the duties of two offices are repugnant or overlap so that their exercise may require contradictory or inconsistent action, to the detriment of the public interest, their discharge by one person is incompatible with that interest."[89]

In light of the foregoing, we conclude that a person may not simultaneously serve as a member of the Concord City Council and as the Contra Costa County Superintendent of Schools.

*****

---

Ops.Cal.Atty.Gen., *supra*, at p. 22.

[84] Ed. Code, §§ 1080, subd. (d), 10900-10903.

[85] Ed. Code, § 10905; 91 Ops.Cal.Atty.Gen. 61, 63, fn. 10 (2008).

[86] See 82 Ops.Cal.Atty.Gen., *supra*, at p. 76 (conflict could arise where both entities authorized to construct same type of facilities); 76 Ops.Cal.Atty.Gen. 81, 85 (1993) (conflict could arise where both entities may enter into contracts involving matters of mutual concern with third parties); 66 Ops.Cal.Atty.Gen., *supra*, at pp. 176, 179 (agreements for joint projects create conflicts).

[87] See 85 Ops.Cal.Atty.Gen., *supra*, at p. 241.

[88] 80 Ops.Cal.Atty.Gen., *supra*, at p. 76.

[89] *People ex rel. Bagshaw v. Thompson* (1942) 55 Cal.App.2d 147, 150; accord, 93 Ops.Cal.Atty.Gen., *supra*, at p. 109.