TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 17-1101 |
| of | : | April 26, 2019 |
| XAVIER BECERRA<br>Attorney General | : | |
| DIANE EISENBERG<br>Deputy Attorney General | : | |

_____

THE HONORABLE HEATH FLORA, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:

May the Mayor of the City of Riverbank simultaneously serve as a member of the Board of Directors of the Stanislaus Consolidated Fire Protection District?

CONCLUSION

The Mayor of the City of Riverbank may simultaneously serve as a member of the Board of Directors of the Stanislaus Consolidated Fire Protection District if the mayor has been selected by the City of Riverbank to be its designated appointee to the board, but may not simultaneously serve in both positions if the mayor is selected to the board in some other capacity, such as that of a public member.

1

ANALYSIS

**Introduction**

The City of Riverbank (City, or Riverbank) is a general law city located in Stanislaus County. Riverbank is governed by an elected city council comprising five members, including a mayor who is elected at-large.[1]

The Stanislaus Consolidated Fire Protection District (Fire District) is a special district[2] in the eastern portion of Stanislaus County. The Fire District's territory includes the cities of Riverbank and Waterford, and several other communities and unincorporated areas.[3] The Fire District provides a variety of fire protection and emergency response services, including firefighting, fire prevention, fire safety education, and emergency rescue and medical services.[4] The Fire District was created in 1995 when four smaller fire protection agencies combined with each other,[5] and was formed and operates under the authority of the Fire Protection District Law of 1987 (Fire District Law).[6]

---

[1] City of Riverbank, "City Council," <http://www.riverbank.org/192/City-Council> (as of Apr. 19, 2019). The Riverbank City Council also serves as the Local Redevelopment Authority Board and the Public Financing Authority Board. (*Ibid*.; see also Riverbank Mun. Code, § 30.03, subd. (A).)

[2] The terms "district" and "special district" are synonymous, and mean a local public agency authorized by law to perform specified governmental or proprietary functions within a defined area. (Gov. Code, § 56036, subd. (a); see also 87 Ops.Cal.Atty.Gen. 1, 2 (2004).)

[3] Stanislaus Consolidated Fire Protection District, "About Our District," <http://www.scfpd.us> (as of Apr. 19, 2019). The Fire District has also entered into agreements to provide fire protection services to the City of Oakdale and the Oakdale Fire Protection District (*ibid*.), both of which are located in Stanislaus County but outside the Fire District's boundaries (see <http://www.stanislauslafco.org/info/PDF/SOI/Districts/OakdaleRuralFPD.pdf> [as of Apr. 19, 2019]).

[4] Stanislaus Consolidated Fire Protection District, "Services Provided," <http://www.scfpd.us/services-provided/> (as of Apr. 19, 2019).

[5] Stanislaus Consolidated Fire Protection District, "History," <http://www.scfpd.us/history/> (as of Apr. 19, 2019).

[6] Health & Saf. Code, §§ 13800-13970. The Fire Protection District Law of 1987, which replaced earlier laws relating to fire protection districts, is also known as the Bergeson Fire District Law. (Health & Saf. Code, § 13800.)

2

17-1101

Under the Fire District Law, every fire protection district is governed by a board of directors,[7] but boards may have different numbers of members,[8] and may be constituted in a variety of ways. For example, fire district boards may be elected or appointed, and in some cases, depending on the type of territory encompassed by a district, a county board of supervisors or a city council may appoint itself as the district board.[9] Here, the Fire District is governed by a board of directors comprising five appointed members, each of whom must be a resident of the district,[10] and each of whom serves a four-year term.[11] The cities of Riverbank and Waterford each appoint one board member.[12] The Stanislaus County Board of Supervisors appoints the other three board members as follows: one resident of the area formerly covered by the old Empire Fire Protection District (which was one of the districts that was absorbed into the consolidated district in 1995), and two public members-at-large.[13] One at-large position is appointed from the Stanislaus County Board of Supervisors District 1, and another from its District 2.[14]

We are asked to determine whether a person who is serving as Mayor of Riverbank may simultaneously serve as a board member of the Fire District. This inquiry requires us to explore the doctrine of incompatible offices, which prohibits a person from concurrently holding two public offices if the performance of the duties of either office could have a significant adverse effect on the other.[15] Importantly, however, the doctrine also permits

---

[7] Health & Saf. Code, § 13840. We use the terms "director" and "board member" interchangeably herein.

[8] Health & Saf. Code, § 13842 (fire protection district board may have three, five, seven, nine, or eleven members).

[9] See, e.g., Health & Saf. Code, §§ 13835 (district of unincorporated territory in one county); 13838 (district of incorporated territory within a single city).

[10] See Health & Saf. Code, § 13841.

[11] Stanislaus Consolidated Fire Protection District, "About Us and Our History," <http://www.scfpd.us/about-us/> (as of Apr. 19, 2019); see also Health & Saf. Code, §§ 13841, 13843; Elec. Code, § 10507.

[12] Stanislaus County, "Committee Fact Sheet," <http://www.stancounty.com/bos/b&c/pdf/stanislaus-consolidated-fire-protection-dist-fact-sheet.pdf> (as of Apr. 19, 2019).

[13] *Ibid*.

[14] Stanislaus Consolidated Fire Protection District, "About Us and Our History," <http://www.scfpd.us/about-us/> (as of Apr. 19, 2019).

[15] 68 Ops.Cal.Atty.Gen. 337, 339 (1985); accord, 93 Ops.Cal.Atty.Gen. 104, 108 (2010); 87 Ops.Cal.Atty.Gen. 153, 154 (2004); see also *Mott v. Horstmann* (1950) 36 Cal.2d 388, 391 (doctrine applies where the functions of the offices concerned are

3

the Legislature to abrogate this general rule by explicitly authorizing a concurrent holding of offices that would otherwise be prohibited.[16]  In the circumstances presented here, we find that the Legislature has abrogated the general prohibition so as to permit a member of the Riverbank City Council, including the mayor, to serve also as a director of the Fire District as the City's appointee.  We believe that this conclusion is dictated by Health and Safety Code section 13837, subdivision (a), which provides, in part, that in the case of a fire district containing unincorporated territory and the territory of one or more cities, "[t]he board of supervisors or city council may appoint one or more of its own members to the district board."[17]

However, we further conclude that the Mayor of Riverbank may *not* be appointed to the board by any agency other than the City of Riverbank.  That is, we believe that the abrogation of the incompatible offices prohibition in this case allows each of the appointing agencies to appoint one of its own officers to a board seat that it is authorized to fill, but that the prohibition remains in force in other circumstances.  Thus, if Riverbank appoints its mayor to the Fire District board, the mayor may serve in both positions despite conflicts that may arise from such simultaneous service, but those same conflicts would render the two positions incompatible if the mayor were to assume a seat on the Fire District board in some other way.

We explain our reasoning and conclusion in greater detail below.

**The Doctrine of Incompatible Offices and Government Code Section 1099**

The doctrine of incompatible offices "springs from considerations of public policy which demand that a public officer discharge his or her duties with undivided loyalty."[18]  For many years, the doctrine was developed and expressed only in common law.  In 2005, the Legislature codified the common law rule by enacting Government Code section

---

inherently inconsistent); *Eldridge v. Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 319 (1990) (*Eldridge*).

[16] *American Canyon Fire Protection Dist. v. County of Napa* (1983) 141 Cal.App.3d 100, 104 (*American Canyon Fire Protection Dist.*); Gov. Code, § 1099, subd. (a); 95 Ops.Cal.Atty.Gen. 67, 73 (2012); 85 Ops.Cal.Atty.Gen. 239, 241 (2002).

[17] Health & Saf. Code, § 13837, subd. (a).

[18] 68 Ops.Cal.Atty.Gen., *supra*, at p. 339; see also 63 Ops.Cal.Atty.Gen. 623, 625 (1980); 17 Ops.Cal.Atty.Gen. 129, 130 (1951).

4

17-1101

1099.[19]  Subdivision (a) of that section provides:

> (a) A public officer, including, but not limited to, an appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible. Offices are incompatible when any of the following circumstances are present, unless simultaneous holding of the particular offices is compelled or expressly authorized by law:
>
> (1) Either of the offices may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over the other office or body.
>
> (2) Based on the powers and jurisdiction of the offices, there is a possibility of a significant clash of duties or loyalties between the offices.
>
> (3) Public policy considerations make it improper for one person to hold both offices.[20]

In analyzing the relation of the incompatible offices doctrine to the question before us, we look both to Government Code section 1099 and to precedent established under the

---

[19] Added by Stats. 2005, ch. 254, § 1, eff. Jan. 1, 2006.

[20] Gov. Code, § 1099, subd. (a).  The rest of Government Code section 1099 provides:

(b) When two public offices are incompatible, a public officer shall be deemed to have forfeited the first office upon acceding to the second.  This provision is enforceable pursuant to Section 803 of the Code of Civil Procedure.

(c) This section does not apply to a position of employment, including a civil service position.

(d) This section shall not apply to a governmental body that has only advisory powers.

(e) For purposes of paragraph (1) of subdivision (a), a member of a multimember body holds an office that may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over another office when the body has any of these powers over the other office or over a multimember body that includes that other office.

(f) This section codifies the common law rule prohibiting an individual from holding incompatible public offices.

5

common law.[21]

**Are the Positions Public Offices?**

We observe initially that the doctrine of incompatible offices applies only to public offices, and not to positions of employment.[22] We have previously characterized a public office, for purposes of the doctrine, as "a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary; (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state."[23] Under Government Code section 1099, subdivision (a), "public office" expressly includes membership on a governmental board or body so long as the body is not merely advisory.[24]

We have stated in prior opinions that a mayor of a general law city holds a public office for purposes of the incompatible offices doctrine.[25] A mayor is a member of the city

---

[21] In an uncodified section of the bill that enacted Government Code section 1099, the Legislature declared that the act was not intended to expand or contract the common law prohibition against holding incompatible public offices, and that interpretation of the act "shall be guided by judicial and administrative precedent concerning incompatible public offices developed under the common law." (Stats. 2005, ch. 254, § 2.)

[22] Gov. Code, § 1099, subds. (a), (c); *People ex rel. Chapman v. Rapsey* (1940) 16 Cal.2d 636, 639-640 (*Rapsey*); *Eldridge, supra,* 224 Cal.App.3d at p. 319 (doctrine does not apply where one position is a public office and the other an employment).

[23] 68 Ops.Cal.Atty.Gen., *supra,* at p. 342; accord, 95 Ops.Cal.Atty.Gen. 77, 78 (2012); 93 Ops.Cal.Atty.Gen. 144, 148 (2010); 93 Ops.Cal.Atty.Gen., *supra,* at p. 105; 82 Ops.Cal.Atty.Gen. 83, 84 (1999); 74 Ops.Cal.Atty.Gen. 116, 118 (1991); see also *Moore v. Panish* (1982) 32 Cal.3d 535, 545.

The state's sovereign powers include police powers, acquiring and disposing of public property, incurring financial obligations on behalf of the public agency, and acting on behalf of the public agency in business or political matters. (*Schaefer v. Super. Ct.* (1952) 113 Cal.App.2d 428, 432-433.)

[24] See also 68 Ops.Cal.Atty.Gen., *supra,* at p. 344 (citing cases decided under the common law doctrine declaring that members of governing boards of public districts or entities are public officers).

[25] 98 Ops.Cal.Atty.Gen. 94, 96-97 (2015); 84 Ops.Cal.Atty.Gen. 34, 38 (2001).

6

council,[26] and a city council member holds a public office for purposes of the doctrine.[27] The position of city council member is established by law[28] and is continuing,[29] and a city council is vested with numerous sovereign powers, including the authority to enact ordinances, levy taxes, contract for services and property, acquire property by eminent domain, regulate construction, and provide for public utilities and public works.[30] A mayor of Riverbank has all of the powers and duties of every other member of the council.[31] The mayor is president of the council,[32] and has additional powers and responsibilities in representing the council and conducting its business.[33] Accordingly, the Mayor of Riverbank is a public officer.

We have also previously declared that a member of the board of directors of a fire protection district holds a public office for purposes of the incompatible offices doctrine,[34] and we affirm that determination here. The position of district board director is established by law, and is continuing.[35] The board of directors of a fire protection district is the

---

[26] Gov. Code, § 34903 (elected mayor); see also Gov. Code, §§ 36801, 36803; 89 Ops.Cal.Atty.Gen. 159, 164 (2006); 57 Ops.Cal.Atty.Gen. 626, 628 (1974).

[27] 74 Ops.Cal.Atty.Gen. 82, 83-84 (1991); see also Gov. Code, § 1099, subd. (a); 91 Ops.Cal.Atty.Gen. 25, 26 (2008).

[28] Gov. Code, § 36501, subd. (a) (government of general law city is vested in city council of at least five members).

[29] Gov. Code, § 36503; *Denio v. City of Huntington Beach* (1943) 22 Cal.2d 580, 590, overruled on other grounds by *Fracasse v. Brent* (1972) 6 Cal.3d 784, 790-791.

[30] Gov. Code, §§ 37100, 37100.5, 37101, 37103, 37350, 37350.5, 38660, 38730, 38742, subds. (a), (b), 39792, 40401; see also Gov. Code, §§ 34000 (city council is legislative body of the city), 50002 (same).

[31] Gov. Code, § 34903; 98 Ops.Cal.Atty.Gen., *supra*, at p. 101; 79 Ops.Cal.Atty.Gen. 21, 23 (1996).

[32] Gov. Code, § 34002.

[33] For example, the mayor presides at council meetings (Gov. Code, § 36802), signs warrants and contracts (Gov. Code, § 40602), administers oaths (Gov. Code, § 40603), and makes appointments (Gov. Code, § 40605); see also Riverbank Mun. Code, § 32.03, subd. (A) (Mayor of Riverbank makes appointments to boards, commissions, and committees); 81 Ops.Cal.Atty.Gen. 75, 76-80 (1998) (discussing elected mayor's appointment power).

[34] See, e.g., 97 Ops.Cal.Atty.Gen. 50, 52-53 (2014); 84 Ops.Cal.Atty.Gen. 94, 95 (2001); 76 Ops.Cal.Atty.Gen. 38, 40 (1993).

[35] Health & Saf. Code, §§ 13842-13843, 13860; see also Elec. Code, §§ 10500-10501,

17-1101

legislative body of the district;[36] as governed by its board, a district may sue and be sued, acquire property, appoint employees, enter into and perform contracts, establish rules and regulations for the administration and operation of services provided by the district, adopt a fire prevention code, and exercise other powers necessary to carry out the purposes of the Fire District Law.[37]  Thus, a director of the Fire District is also a public officer.

**Are the Offices Incompatible, Absent Abrogation of the Prohibition?**

Pursuant to Government Code section 1099 and established precedent, a person may not simultaneously hold two public offices if either office exercises a supervisory, auditing, or removal power over the other, if there is any significant clash of duties or loyalties between the offices, or if the dual office holding would be improper for reasons of public policy.[38]  It is well established that a past or present conflict in the performance of the duties of either office is not required for a finding of incompatibility; rather, it is sufficient that a conflict may occur '"in the regular operation of the statutory plan."'[39]  Nor is it necessary that the clash of duty exist in all or in the greater part of the official functions; it is enough when the holder of the two offices cannot in every instance discharge the duties of each.[40]  Thus, only "one potential significant clash of duties or loyalties is necessary to make offices incompatible."[41]  Abstention when a conflict arises does not cure the incompatibility or obviate the effects of the doctrine.[42]  When two public offices are incompatible, the would-be dual officeholder is deemed to have forfeited the first office

10507.

[36] Health & Saf. Code, § 13840.

[37] Health & Saf. Code, §§ 13861, subds. (a)-(d), (f), (h)-(j); 13863, 13869.

[38] Gov. Code, § 1099, subd. (a); *Rapsey*, *supra*, 16 Cal.2d at p. 642; 90 Ops.Cal.Atty.Gen. 24, 26 (2007).

[39] 66 Ops.Cal.Atty.Gen. 176, 177 (1983), quoting 3 McQuillin, Municipal Corporations (3d ed. 1973) § 12.67, p. 297; see also 93 Ops.Cal.Atty.Gen. 110, 111 (2010) (incompatible offices prohibition "does not await the occurrence of an actual clash before taking effect, but intercedes to prevent it"); 63 Ops.Cal.Atty.Gen., *supra*, at p. 624 (potential interaction sufficient to render offices incompatible).

[40] *Rapsey*, *supra*, 16 Cal.2d at pp. 641-642.

[41] 85 Ops.Cal.Atty.Gen. 60, 61 (2002); see also 37 Ops.Cal.Atty.Gen. 21, 22 (1961).

[42] 85 Ops.Cal.Atty.Gen., *supra*, at p. 240; 66 Ops.Cal.Atty.Gen., *supra*, at pp. 177-178; see also 63 Ops.Cal.Atty.Gen. 710, 715-716 (1980).

upon acceding to the second.[43]

We perceive a number of different situations in which the duties of the Mayor of Riverbank (or other city council member) and a director of the Fire District might conflict. Since Riverbank is wholly situated within the Fire District, Riverbank and the district cover common territory. Decisions and actions by the city council could affect the district, and vice versa. For example, Fire District directors have the authority to adopt fire safety building standards that would apply in Riverbank, but the Riverbank City Council has the power to modify or reject those standards.[44] The ability of the council to overrule the district board in such a matter, as well as the potential clash of loyalties in determining what is best for Riverbank as opposed to what is best for the Fire District as a whole, indicate that the offices of city council member and fire district director would be incompatible, absent legislative action exempting these offices from application of the doctrine.[45] In addition, both Riverbank and the Fire District have the power of eminent domain,[46] and each might attempt to condemn the same property, or even the property of the other.[47] As we have previously determined, the common ability to use eminent domain within a given territory results in a potential conflict for the officials authorized to exercise the power.[48]

Contractual relationships between Riverbank and the Fire District may also give rise to potential conflicts. A city and a fire protection district are authorized to enter into agreements with each other under the Joint Exercise of Powers Act, in order to jointly

---

[43] Gov. Code, § 1099, subd. (b); see also *Rapsey, supra*, 16 Cal.2d at p. 644; 98 Ops.Cal.Atty.Gen., *supra*, at p. 96; 95 Ops.Cal.Atty.Gen., *supra*, at p. 73, fn. 29; 66 Ops.Cal.Atty.Gen., *supra*, at p. 178.

[44] See Health & Saf. Code, § 13869.7, subds. (a), (c); see also Health & Saf. Code, § 13870; 97 Ops.Cal.Atty.Gen., *supra*, at pp. 54-55 (fire district's statutory power to issue written orders to eliminate fire hazards may engender clash of duties and loyalties between fire district director and officer of public agency that owns property for which such orders have been issued).

[45] See Gov. Code, § 1099, subds. (a)(1)-(a)(2).

[46] Gov. Code, § 37350.5 (city); Health & Saf. Code, § 13861, subd. (c) (fire district).

[47] See Code Civ. Proc., § 1240.610 (a public body may condemn property of another public body where a superior use can be shown).

[48] 97 Ops.Cal.Atty.Gen., *supra*, at p. 54 (potential conflict for director of water and fire districts from districts' common power of eminent domain); 85 Ops.Cal.Atty.Gen. 199, 201 (2002); 80 Ops.Cal.Atty.Gen. 242, 244 (1997); 65 Ops.Cal.Atty.Gen. 606, 607 (1982); 37 Ops.Cal.Atty.Gen., *supra*, at p. 22.

exercise a power they have in common.[49]  Negotiating any such agreement, even for the purpose of collaboration, would entail a division of loyalties for a dual office holder.[50]  We have previously concluded that the chief of a county fire protection district who was elected to the county board of supervisors would face a conflict of loyalties in making contracts authorized by the Joint Exercise of Powers Act.[51]  A city council member and the director of a fire protection district would likewise face a conflict of loyalties.  Other types of agreements, such as one to jointly acquire equipment, could similarly engender conflicts.[52]

Even contracts between Riverbank or the Fire District with another entity could involve a conflict of duties or loyalties on the part of a person who is both the mayor of the city and a director of the district.[53]  A fire protection district may contract with any person or public agency to provide services to territory outside the district.[54]  Riverbank and the Fire District might have divergent views regarding the pursuit of any new such contracts.

A dual office holder might also be subject to conflicting duties and loyalties with respect to city and district finances.  Pursuant to the Fire District Law, a fire protection district may levy certain special taxes and assessments.[55]  A city and a district could disagree about an assessment affecting property in or overseen by the city, and we are informed that a dispute of that nature has, in fact, occurred between Riverbank and the Fire

---

[49] See Gov. Code, § 6500 et seq.  The definition of "public agency" for the purposes of entering into agreements to exercise joint powers expressly includes, inter alia, a city and a public district.  (Gov. Code, § 6500; see also Health & Saf. Code, § 13861, subd. (j) [expressly authorizing a fire district to enter into joint powers agreements].)

[50] 68 Ops.Cal.Atty.Gen. 171, 173 (1985), quoting Cal.Atty.Gen., Indexed Letter, No. IL 75-22 (Feb. 18, 1975) (conflict results from fact that same person sits on both sides of an agreement); 66 Ops.Cal.Atty.Gen., *supra*, at p. 179.

[51] 66 Ops.Cal.Atty.Gen., *supra*, at p. 179 (analysis based on the Fire Protection District Law of 1961, the predecessor to the current Fire District Law).

[52] See 76 Ops.Cal.Atty.Gen. 81, 85 (1993); 66 Ops.Cal.Atty.Gen., *supra*, at p. 179.

[53] 76 Ops.Cal.Atty.Gen., *supra*, at p. 85 (conflict could arise where entities may each enter into contracts involving matters of mutual concern with third parties).

[54] Health & Saf. Code, § 13878.

[55] Health & Saf. Code, §§ 13910-13914.  A fire protection district also receives a share of property taxes collected by the county in which the district is located.  (Health & Saf. Code, § 13896.)  The major sources of funding for the Fire District are property taxes and a special benefit assessment approved in 2004.  (Stanislaus Consolidated Fire Protection District, "District Budget," <http://www.scfpd.us/district-budget/> [as of Apr. 19, 2019].)

District.[56]  A fire district may also accept revenues from various public agencies, including cities,[57] and is authorized to charge fees to the users, including cities, of district services.[58]  Thus, the Riverbank City Council might be called upon to decide whether to contribute funds to the Fire District, or might oppose a district-approved fee or fee increase.  The interests of the City and the Fire District might clash in cases where such matters arise.

In addition, the Riverbank City Council and the Fire District board could have conflicting views and interests regarding any potential change in the organization of Riverbank or the District.[59]  For example, the Riverbank City Council may in the future favor the detachment of Riverbank from the Fire District,[60] or the Fire District may consider further consolidation with one or more other districts.[61]  Separate from a change of organization, the Fire District could seek to alter the types of services or level of service it provides to an area within the district.[62]  A person who is both Mayor of Riverbank and a director of the Fire District might be conflicted as to whether to use a city perspective or

[56] See Erin Tracy, *Riverbank, Fire District Clash Over Who Should Pay Assessment on Former Ammunition Plant Property*, Modesto Bee (Jan. 15, 2017) <https://www.modbee.com/news/local/news-columns-blogs/bee-investigator/article126763854.html> (as of Apr. 19, 2019).  The newspaper article relates that, for some period of time, Riverbank and the Fire District disagreed about whether Riverbank was responsible for paying a special assessment levied by the Fire District on property owned by the United States but leased to Riverbank and overseen by the Riverbank Local Redevelopment Authority.  As noted above, the Riverbank City Council sits as the board of the Riverbank Local Redevelopment Authority.  We have not been informed as to whether the dispute between Riverbank and the Fire District has been resolved.

[57] Health & Saf. Code, § 13898.

[58] Health & Saf. Code, §§ 13916, 13918.

[59] See Health & Saf. Code, § 13812 (providing that changes of organization of a fire protection district are governed by the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000, contained in Gov. Code, § 56000 et seq.); Gov. Code, § 56100, subd. (a) (Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 governs changes of organization for cities and districts).  "Changes of organization" include city incorporations, district formations, annexations to or detachments from a city or district, disincorporations of cities, dissolutions of districts, and certain mergers and consolidations.  (Gov. Code, § 56021.)

[60] See Gov. Code, § 56033.

[61] See Gov. Code, § 56030.

[62] Health & Saf. Code, § 13950, subd. (a).

11

a district-wide perspective in making decisions regarding any of the situations described above.

The examples above do not exhaust the possibilities for conflict, but they demonstrate that the concurrent holding of the offices of Mayor of Riverbank and director of the Fire District carries with it the potential for the kinds of conflicts delineated in Government Code section 1099, subdivision (a). Given this understanding, we must still consider whether, notwithstanding these potentials for conflict, the Legislature has sanctioned the concurrent holding of the offices at issue here.

### Has the Incompatible Offices Prohibition Been Abrogated in this Instance?

As noted above, the Legislature may override the rule against holding incompatible offices whenever it chooses.[63] This discretion was acknowledged under the common law and has been preserved in Government Code section 1099, subdivision (a), which provides that conflicting duties or loyalties render offices incompatible "unless simultaneous holding of the particular offices is compelled or expressly authorized by law." We have previously observed that the Legislature most often abrogates the doctrine with respect to regional commissions and district boards;[64] thus, for example, the Legislature permits a city council member to serve on a sanitary district board,[65] and requires some combination of county, city and special district officers to serve on local agency formation commissions

---

[63] *American Canyon Fire Protection Dist.*, *supra*, 141 Cal.App.3d at p. 104; *McClain v. County of Alameda* (1962) 209 Cal.App.2d 73, 79 ("There is nothing to prevent the Legislature . . . from allowing, and even demanding, that an officer act in a dual capacity"); 95 Ops.Cal.Atty.Gen. 130, 134 (2012); 87 Ops.Cal.Atty.Gen. 54, 60 (2004); 63 Ops.Cal.Atty.Gen. 748, 750 (1980) ("The Legislature may . . . and often does abrogate the common law doctrine when it considers it necessary or convenient to permit officers to hold incompatible offices").

[64] 74 Ops.Cal.Atty.Gen., *supra*, at p. 117, fn. 1.

[65] Health & Saf. Code, § 6480, subd. (b).

(also known as LAFCOs),[66] despite the possibility of significant conflicts of loyalties.[67] The Legislature also allows the governing boards of certain agencies created pursuant to a joint powers agreement to be composed of officers of the governing boards of agencies that are parties to the agreement.[68] Abrogation of the incompatible offices prohibition may be complete or partial; that is, depending on the circumstances, the Legislature may suspend, or merely modify, the prohibition.[69]

With respect to fire protection districts, we have previously determined that the incompatible offices prohibition has been abrogated in cases where the district is a subsidiary district of a city, and the city council is authorized to serve, ex officio, as the board of the district.[70] The case at hand is distinguishable in that the Fire District has territory in common with a number of different local jurisdictions, and is not a subsidiary district.[71] But the City of Riverbank asserts that the incompatible offices prohibition is also abrogated with respect to the offices of Riverbank mayor and Fire District director because Health and Safety Code section 13837 expressly authorizes the simultaneous holding of

---

[66] Gov. Code, §§ 56325, subds. (a)-(c), 56326-56329. In general, a local agency formation commission consists of two members appointed by and from the county board of supervisors; two members appointed by the cities in the county, each of whom shall be a mayor or council member; two presiding officers or members of legislative bodies of independent special districts who are appointed by a district selection committee; and one member representing the general public who is appointed by the other members of the commission. (Gov. Code, § 56325; see also 84 Ops.Cal.Atty.Gen., *supra*, at p. 97.)

[67] 63 Ops.Cal.Atty.Gen., *supra*, at p. 750.

[68] Gov. Code, § 6508; see also 78 Ops.Cal.Atty.Gen. 60, 60-62, 65 (1995) (concluding that members of the Burbank City Council could simultaneously serve as members of a local airport authority commission created pursuant to the Joint Exercise of Powers Act).

[69] See 95 Ops.Cal.Atty.Gen., *supra*, at pp. 134-135; 81 Ops.Cal.Atty.Gen. 51, 53 (1998); 76 Ops.Cal.Atty.Gen., *supra*, at p. 85; 61 Ops.Cal.Atty.Gen. 396, 398 (1978).

[70] 81 Ops.Cal.Atty.Gen. 344, 344-346 (1998); see also Gov. Code, §§ 56032.5 (defining dependent special district), 56078 (defining subsidiary district).

[71] We note that despite the fact that the Fire District board is appointed by local governmental entities, it is deemed to be an independent special district by the State Controller. (See, e.g., Betty T. Yee, California State Controller, "Special Districts Listing," <https://bythenumbers.sco.ca.gov/Special-Districts-Other/Special-Districts-Listing/fv6y-3v29/data> [as of Apr. 19, 2019]; see also Gov. Code, § 56044 [defining "independent special district"].)

13

the two positions.  We agree, to an extent.

Health and Safety Code Section 13837, subdivision (a) provides that in the case of a fire protection district that contains unincorporated territory and the territory of one or more cities:

> (a) The district board may be elected or appointed by the county board of supervisors and the city councils in which the district is located.  If the district board is to be appointed, the board of supervisors and the city council or councils shall appoint directors according to the proportionate share of population [of] that portion of the county and each city within the district, provided that the board of supervisors [*sic*] and each city council shall appoint at least one director.  *The board of supervisors or city council may appoint one or more of its own members to the district board*.  In no case shall the number of directors exceed 11 members.[72]

The Fire District contains both unincorporated areas and cities, and, when it was formed, its formation documents called for a five-member board appointed in accordance with Health and Safety Code section 13837.[73]  Consistent with section 13837, subdivision (a), Riverbank appoints one director to the Fire District board.  This statutory subdivision does not require Riverbank to select one of its own council members as its appointee, but it permits the City to do so.  The history of the Fire District Law suggests that the Legislature believed that the dual office holding authorized by section 13837 could be beneficial.[74]  In a somewhat similar context, the Legislature has provided that a public

---

[72] Health & Saf. Code, §13837, subd. (a), italics added.  Health and Safety Code section 13837, subdivision (b) provides that, "[n]otwithstanding subdivision (a), the county board of supervisors may appoint itself as the district board, if the city council of each of the cities consents by resolution."

[73] See Stanislaus County Local Agency Formation Com. Res. No. 94-17 (adopted Nov. 30, 1994), p. 3; Stanislaus County Bd. of Supervisors Res. No. 95-116 (adopted Jan. 31, 1995), p. 3.

[74] An Assembly Committee Report that led to the enactment of the Fire Protection District Law of 1961, the predecessor to the current Fire District Law, noted that, for appointed boards, the service of county supervisors on a fire protection district board could enhance efficiency and planning, and that it could be desirable to have direct representation on a fire protection district board of a city included within the district.  (Assem. Interim Com. on Municipal and County Government, "Special Districts in the State of California, Problems in General and the Consolidation of Sewer and Fire District Acts," Final Report, Vol. 6, No. 1957-1959, Assem. J. (1959 Reg. Sess.) pp. 14-15, appen.)

agency that is part of a county water authority governed by the County Water Authority Act may appoint a member of the agency's governing body to be the agency's representative on the board of the water authority.[75] We wrote of that provision: "The Legislature has weighed the advantages and disadvantages of having Authority directors with . . . conflicting loyalties and has determined that the public would be best served by allowing the interests of the appointing agencies to be represented on the Authority's board of directors."[76] In enacting Health and Safety Code section 13837, the Legislature has permitted the interests of the local jurisdictions served by a fire district to be represented on the district board by members of the jurisdictions' legislative bodies.[77]

A complicating factor in reaching our conclusion that Health and Safety Code section 13837 applies here is that it is located in a part of the Fire District Law that expressly applies to the formation of fire protection districts and the selection of a newly formed district's initial board of directors,[78] while the question presented concerns membership on an existing board of an established district. A separate chapter of the Fire District Law deals with existing boards of directors,[79] and no statute within that chapter

---

[75] Stats. 1945, ch. 545, § 6, subd. (b), West's Ann. Wat. Code—App. ch. 45-6.

[76] 90 Ops.Cal.Atty.Gen., *supra*, at p. 29.

[77] While the Fire Protection District Law of 1961 law required county supervisors and city council members to serve on an appointed board of a fire protection district that encompassed unincorporated territory and the territory of one or more cities (see former Health & Saf. Code, § 13831, added by Stats. 1961, ch. 565), current Health and Safety Code section 13837, as mentioned above, is permissive rather than mandatory. We note that, as of the date of this opinion, none of the Fire District directors is a Stanislaus County supervisor or a Riverbank or Waterford city council member.

[78] Health and Safety Code section 13837 is contained in Chapter 3, Article 3 of the Fire District Law. Chapter 3 is titled "Formation," and Article 3 is titled "Selection of the Initial Board of Directors." Health and Safety Code section 13834, the first statute in Article 3, states: "The initial board of directors of a district formed on or after January 1, 1988, shall be determined pursuant to this article." The other statutes in Article 3 provide for different possible compositions of the initial boards of fire districts depending on whether the district encompasses only unincorporated territory, only incorporated territory, or a combination of both unincorporated and incorporated territory.

[79] Chapter 4 of the Fire District Law, comprising Health and Safety Code sections 13840 through 13857, is titled "Existing Board of Directors and Officers." This chapter addresses such matters as residency requirements for board members, changes in the number of board members, changing whether a particular board is appointed or elected, the selection of board officers, and the conduct of board meetings. (See, e.g., Health & Saf. Code,

15

expressly authorizes a city council member or mayor to sit on the board of a fire district that, like the Fire District, consists of unincorporated territory and the territory of one or more cities. That could suggest that the Legislature had intended that a city council member could serve only on the first board of a fire district so constituted, and not on subsequent boards, which would include the current and future boards of the Fire District. However, in examining the chapter on existing boards, we find nothing that compels a change in the district board organization that was adopted when the district was formed. Indeed, the chapter on existing boards incorporates references to certain ways that initial boards may be constituted in the context of actions that may be taken by, or may affect, existing boards, indicating that the Legislature contemplated that subsequent boards of the same district could retain the form of the initial board.[80] For example, Health and Safety Code section 13844, located in the chapter on existing boards, authorizes the delegation of an existing board's duties to a fire commission in cases where "a county board of supervisors or a city council has appointed itself as the district board."[81] Such boards are among the types of boards that are authorized in the chapter on the constitution of initial boards.[82] Although the chapter on existing boards does not specifically incorporate references to initial boards constituted as authorized by Health and Safety Code section 13837, subdivision (a), we believe that the Legislature intended to allow such a board organization to continue, just as it did for other possible initial board organizations. Accordingly, we conclude that Health and Safety Code section 13837 applies to the current board of the Fire District, and that, in the absence of other factors that might preclude such appointment, Riverbank may appoint its mayor to the Fire District board as Riverbank's designated representative.[83]

---

§§ 13841, 13845, 13848, 13853, 13855.)

[80] See, e.g., Health & Saf. Code, §§ 13841 (referring to type of board authorized by Health & Saf. Code, §§ 13835, 13837, subd. (b)); 13842 (referring to types of boards authorized by Health & Saf. Code, §§ 13835, 13837, subd. (b), 13838); 13845, subd. (a) (including a reference to types of boards authorized by Health & Saf. Code, §§ 13835, 13837, subd. (b), 13838).

[81] Health & Saf. Code, § 13844.

[82] See Health & Saf. Code, §§ 13835, 13837, subd. (b), 13838.

[83] The question of whether any other law, regulations, or agreements could affect the application of Health and Safety Code section 13837 to the Fire District is beyond the scope of this opinion.

**Is the Abrogation Limited?**

This does not end our inquiry, however. Could the Mayor of Riverbank be appointed to one of the Fire District board seats other than the one reserved for appointment by the City of Riverbank, such as one of the county-appointed public at-large positions, assuming that the mayor meets the residency requirement for one of those positions?[84] We conclude that the answer to this question is no.

In our view, the prohibition against holding incompatible offices is abrogated by Health and Safety Code section 13837, subdivision (a) only for a member of the legislative body that appoints him or her. The penultimate sentence of section 13837, subdivision (a) states: "The board of supervisors or city council may appoint one or more of its own members to the district board." In ascertaining the Legislature's intent and purpose in including this sentence, we look first to the provision's plain language.[85] The use of the disjunctive word "or" indicates that the board of supervisors and the city council are separate, rather than collective actors,[86] and the singular possessive pronoun "its," which can only refer to a singular noun or noun phrase, here refers to the singular antecedent "board of supervisors," and, separately, to the singular antecedent "city council." Thus, we understand the sentence to mean that a county board of supervisors may appoint one or more of that county's supervisors to the fire district board, and that a city council may appoint a member or members of that city council to the district board. The provision does not permit a city council to appoint a county supervisor to a fire district board, nor does it permit a board of supervisors to appoint a city council member to a fire district board, as would be required for the Mayor of Riverbank to be appointed to a public member-at-large seat on the Fire District Board.

Our conclusion is bolstered by the fact that, with respect to membership on appointed boards of public agencies, statutory law consistently differentiates "public

---

[84] We are informed that when the request for this opinion was submitted, the representative sitting as the appointee of Riverbank was neither the mayor, nor another Riverbank City Council member, but that the board of the Fire District had one open public at-large position. The City of Riverbank lies within Stanislaus County Board of Supervisors District 1; as mentioned above, one of the public at-large board members of the Fire District is to be appointed from District 1.

[85] See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 (*Dyna-Med*).

[86] See 69 Ops.Cal.Atty.Gen. 20, 23 (1986) ("and" is usually connective, connoting togetherness, while "or" is usually disjunctive, citing Dickerson, "The Difficult Choice Between 'And' and 'Or'" (Mar. 1960) 46 ABA J. 310).

members" from members who are already officers of other public agencies.[87]  We thus generally deem membership on a district board as a public member, and membership on the same board obtained by virtue of holding another public office, to be mutually exclusive roles.

In a prior opinion, we encountered this issue in connection with a regional coastal commission, which consisted of representatives of certain governmental agencies, as well as representatives of the public.  We concluded that a public member of the commission could not continue to serve as a commissioner after that person had been elected to the county board of supervisors, which was authorized to appoint, and had appointed, one of its own members to be its representative on the commission.[88]  We enumerated conflicts that could arise between the roles of county supervisor and regional coastal commissioner, but determined that the law creating the commission precluded the application of the incompatible offices doctrine with respect to certain public officials, including the county supervisor appointed to the commission.[89]  However, we then added:

> It must be noted however, that the Act does not give blanket authorization to *any* public officer to serve on a coastal commission.  Rather it creates a limited exception to the incompatible offices doctrine by specifying certain numbers of governmental representatives to be selected by particular appointing agencies.  [¶] . . . [¶]  It is concluded that the exception to the incompatible offices doctrine is limited to the specific local elected official whose membership on a regional commission derives from that

---

[87] See, e.g., Gov. Code, §§ 8241 (public members of Commission on the Status of Women and Girls are appointed by the other members, who are state executive and legislative officers); 14985.1 (public members of California Commission on Disability Access are appointed by the other members, who are state executive and legislative officers); 53398.51.1 (an enhanced infrastructure financing district is governed by a board composed of officers of governmental taxing agencies and public members); 62001, subd. (c) (a community revitalization and investment authority is governed by an appointed board that includes both officials from the legislative bodies of the public agencies that created the authority, and "two public members").  We note that the appointed public member on a county local agency formation commission is expressly prohibited from being an officer of the county or of any city or district within the county.  (Gov. Code, § 56331; see also 84 Ops.Cal.Atty.Gen., *supra*, at p. 97 [noting that a local agency formation commissioner, *except for the member of the general public*, holds another public office (italics added)].)

[88] 58 Ops.Cal.Atty.Gen. 808, 808, 811-812 (1975).

[89] 58 Ops.Cal.Atty.Gen., *supra*, at pp. 810-811.

18

capacity.[90]

We further concluded that upon taking office as a county supervisor, the person involved would forfeit his or her position as public member on the commission, but would thereafter be eligible to be appointed to the commission as the designated representative of the county board of supervisors.[91]

The above opinion demonstrates that the same individual may be exempt from the prohibition against holding incompatible offices if serving in one capacity, but subject to the prohibition if serving in another. Here, the very same conflicts between the roles of city council member and fire protection district director, as delineated above, would not prevent the Mayor of Riverbank from simultaneously serving on both the Riverbank City Council and the Fire District board if he or she is Riverbank's appointee to the district board, but would otherwise disqualify the mayor from simultaneously serving on both bodies. As the Court of Appeal reminds us, the statutory authorization of dual office-holding in certain circumstances does not necessarily extend to other, different circumstances.[92] We are not at liberty to enlarge the scope of statutory authorization beyond what Health and Safety Code section 13837 permits.

We believe that the limited or partial abrogation of the incompatible offices prohibition that we find at work here comports with the policy of proportionate and balanced representation that the Legislature has crafted for fire protection district boards.[93] To allow the Mayor of Riverbank to serve on the five-member Fire District board in an at-large position would effectively give Riverbank the opportunity to have two officer-

---

[90] 58 Ops.Cal.Atty.Gen., *supra*, at pp. 811-812.

[91] 58 Ops.Cal.Atty.Gen., *supra*, at p. 812.

[92] *American Canyon Fire Protection Dist.*, *supra*, 141 Cal.App.3d at p. 106; see also 95 Ops.Cal.Atty.Gen., *supra*, at p. 74 (concluding that abrogation for city council members does not extend to city planning commissioners appointed by city council).

[93] Health and Safety Code section 13837, subdivision (a) calls for the appointment of directors according to the proportionate share of population of the county and cities within the district. The Legislature also requires proportionate representation by share of population on appointed fire protection district boards for districts consisting of unincorporated territory in two or more counties (Health & Saf. Code, § 13836) and for districts consisting of districts of incorporated territory within two or more cities (Health & Saf. Code, § 13839). When we interpret Health and Safety Code section 13837, we must keep in mind its purpose, and harmonize it, to the extent possible, with other statutes relating to the same subject. (*Dyna-Med*, *supra*, 43 Cal.3d at p. 1387.)

representatives on the board, contrary to the Legislature's purposes and the particular organizational structure adopted by and for the Fire District.[94]  It would not be sufficient, we believe, for the mayor to attempt to put aside allegiance to the City and adopt the wider perspective of a public at-large member of the Fire District board.  The incompatible offices doctrine does not turn upon the integrity of the person concerned or his or her individual capacity to achieve impartiality, but rather "'applies inexorably if the offices come within it, no matter how worthy the officer's purpose . . . .'" [95]

Another prior opinion is instructive on this point.  We considered whether the same person could simultaneously hold the offices of city fire chief, director of a fire protection district with no territory overlapping that of the city, and local agency formation commissioner.  We determined that a city fire chief could serve as director of a fire protection district where the two jurisdictions do not have territory in common, and that a fire district director could serve as a local agency formation commissioner for the county because the Legislature required a local agency formation commission to include representatives of independent special districts.[96]  We nevertheless concluded that the same person could not simultaneously hold all three positions because even though the city fire chief would serve on the local agency formation commission as a district representative, his or her seat on the local agency formation commission would also, in effect, give the cities of the county "three city officers on the LAFCO representing their interests rather than the two specified by the Legislature," thus upsetting the balance of representation contemplated by the Legislature.[97]

In light of the foregoing, we conclude that the Mayor of Riverbank may simultaneously serve as a member of the Fire District board, as the board is currently structured, if Riverbank selects the mayor to be its designated appointee to the board, but may not otherwise simultaneously hold both positions.

*****

---

[94] See *Dyna-Med*, *supra*, 43 Cal.3d at p. 1387 (in construing a statute, we should also consider the consequences that would flow from a particular interpretation).

[95] 68 Ops.Cal.Atty.Gen. 240, 243 (1985), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, p. 295.

[96] 84 Ops.Cal.Atty.Gen., *supra*, at pp. 95-97.

[97] 84 Ops.Cal.Atty.Gen., *supra*, at pp. 97-99; see also 95 Ops.Cal.Atty.Gen., *supra*, at p. 135 (noting that while the Legislature had abrogated the incompatible offices prohibition with respect to membership on board of county water authority, the Legislature had also structured the authority so as to check any one director or member agency's ability to dominate the board).

20